*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0172p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JOE D. PENNYCUFF,

    *Plaintiff-Appellant,*

  *v.*

FENTRESS COUNTY BOARD OF EDUCATION; and
HOMER LEE LINDER, JR., Superintendent of Fentress
County Schools,

    *Defendants-Appellees.*

No. 02-6060

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 98-00059—Thomas A. Wiseman, Jr., District Judge.

Argued: September 23, 2004

Decided and Filed: April 12, 2005

Before: SILER, BATCHELDER, and ROGERS, Circuit Judges.

_____

## COUNSEL

_____

**ARGUED:** Richard L. Colbert, COLBERT & WINSTEAD, Nashville, Tennessee, for Appellant.
Phillips M. Smalling, HASSLER & SMALLING, Byrdstown, Tennessee, for Appellees.
**ON BRIEF:** Richard L. Colbert, COLBERT & WINSTEAD, Nashville, Tennessee, for Appellant.
Phillips M. Smalling, HASSLER & SMALLING, Byrdstown, Tennessee, W. Gary Blackburn,
BLACKBURN & McCUNE, Nashville, Tennessee, for Appellees.

_____

## OPINION

_____

  ALICE M. BATCHELDER, Circuit Judge.  Plaintiff-Appellant Joe D. Pennycuff appeals
from the district court's order granting summary judgment in favor of Defendants-Appellees
Fentress County Board of Education and Homer Lee Linder, Jr., Superintendent of Fentress County
Schools (collectively "defendants"), in this 42 U.S.C. § 1983 action.  Because we conclude that the
district court correctly determined that Pennycuff did not attain tenure as a teacher in the Fentress
County School System under the provisions of the Tennessee Teacher Tenure Law, Tenn. Code
Ann. §§ 49-5-501, *et seq.*, and therefore, that the Board did not deny him due process when it
terminated his employment without affording him the protections to which a tenured teacher is
entitled, we AFFIRM the judgment of the district court.

**I.**

On June 18, 1993, Pennycuff was hired by the Fentress County Board of Education ("Board") as the principal of Clarkrange High School for the 1993-94 school year. Pennycuff had previously been a tenured teacher in the Oneida School System with nearly twenty years of experience. His first year at the high school was tainted by complaints from parents and students, student walkouts and the presentation to the Board of a student petition for Pennycuff's removal. Despite the controversy, the Board voted on June 14, 1994, to retain Pennycuff as the principal of Clarkrange High School for the 1994-95 school year. According to the Board's minutes, Pennycuff's status at that time was that of a "non-tenured teacher."

On August 30, 1994, the Board held a special meeting at which it adopted the motion of Board member Freddie Stults to "transfer [Pennycuff's] tenure from the Oneida School System to the Fentress County School System." This meeting occurred after the Board was expanded from five members to ten, pursuant to Chapter 160 of the Private Acts of 1994, and after the election of the new members of the Board, but before the terms of the old five-member Board had expired. Stults had not been reelected, and his motion to transfer Pennycuff's tenure was his last act as a Board member. Marjorie Wright, then Superintendent of Schools, neither recommended nor objected to the motion. No prior notice of this meeting appeared in any newspaper published and circulated in Fentress County. The agenda for the meeting, prepared by Superintendent Wright, and distributed to the Board members on August 29, 1994, did not include the issue of Pennycuff's tenure as an item for discussion or vote. Neither Wright nor any of the non-moving Board members were aware that Pennycuff's tenure would be discussed at the meeting.

The new ten-member Board met on September 8, 1994, and approved the minutes from the August 30, 1994, meeting except for the approval of the motion to transfer Pennycuff's tenure, which they declared was illegal. The Board eventually voted unanimously to request an Attorney General's Opinion regarding the transfer of tenure. Although at meetings held on November 10, 1994, and December 5, 1994, the Board considered taking action to ratify the actions of August 30, 1994, it has yet to ratify those actions.

In May 1995, the ten-member Board transferred Pennycuff from his position as principal at Clarkrange to a teaching position at the Fentress County Alternative School. Pennycuff responded by filing a complaint with the Chancery Court for Fentress County to contest this transfer and demotion. Pennycuff also filed a *quo warranto* action in the Chancery Court to challenge the constitutionality of the Private Act that had authorized the election of the ten-member Board. Pennycuff's complaint in the first Chancery Court action asserted, in the third sentence of the fifth paragraph, that "[o]n August 30, 1994, Pennycuff acquired tenure as an educator in the Fentress County School System." In their amended answer, the defendants stated, "[t]he allegations contained in sentence three paragraph 5 of the complaint are admitted."

Pennycuff continued teaching at the Fentress County Alternative School during the 1995-96, 1996-97, and 1997-98 school years, and during that time, he was treated as a tenured teacher with respect to renewal or nonrenewal of employment. For example, the Board's practice was to notify all non-tenured teachers of their nonrenewal before April 15th of each year, and then to rehire them later in the summer, as needed. Under Tennessee law, any non-tenured teachers who are not notified of their nonrenewal by April 15th are automatically rehired for the following school year. Tenn. Code Ann. § 49-5-409. Pennycuff did not appear on the nonrenewal list for those school years, and he did not appear on the list of non-tenured teachers who were to be rehired. Instead, he was automatically rehired each year in the same fashion as any tenured teacher in the Fentress County School System.

On January 21, 1998, the Chancery Court ruled in the *quo warranto* action, holding that the Private Act allowing election of a ten-member board was unconstitutional and ordered that the seven board members who had been elected in August 1994 be removed from office. Two of the ousted members, Eddie Cook and Notie Byrd, were appointed to fill the vacant seats, returning the Board to five members. The five-member Board then sought a second legal opinion regarding Pennycuff's tenure. The attorney consulted by the Board opined that Pennycuff did *not* have tenure, and that it would be defensible to treat him as a non-tenured teacher and not renew his employment. On March 16, 1998, on the motion of Cook and Byrd, the Board voted to place Pennycuff on the non-tenured teachers list for notification of non-rehire for the 1998-99 school year. This non-rehire notice did not include any notice of charges and provided no opportunity for a hearing, both of which are required under Tenn. Code Ann. §§ 49-5-511 and 512 when a tenured teacher is dismissed.

Pennycuff filed this 42 U.S.C. § 1983 and Tennessee state law action on June 10, 1998, claiming that his discharge from the Fentress County Alternative School had violated his constitutional and statutory rights as a tenured teacher, and that his discharge was unlawful because it had been in retaliation for exercising his constitutional right of access to the courts. He filed a motion for partial summary judgment on his claim that his discharge had violated his rights as a tenured teacher. The district court granted this motion, concluding that "Pennycuff was a tenured teacher at the time the Fentress County Board of Education fired him without cause." The claim of retaliatory discharge proceeded to a bench trial, and the district court determined that the Board had retaliated against Pennycuff for exercising his right of access to the courts.

The Board appealed only the district court's decision that Pennycuff was tenured in the Fentress County School System. On August 21, 2001, this court reversed the district court's grant of partial summary judgment to Pennycuff on his claim that he was a tenured teacher and the Board had failed to comply with due process requirements in terminating his employment. The case was remanded to the district court for reconsideration in light of the intervening case of *Bowden v. Memphis Board of Education*, 29 S.W.3d 462 (Tenn. 2000). On remand, the district court concluded that Pennycuff had not attained tenure status under the Tennessee Teacher Tenure Law, Tenn. Code Ann. §§ 49-5-501, *et seq.* The district court denied Pennycuff's motion for summary judgment and granted summary judgment to the defendants.

Only if Pennycuff had attained tenure in the Fentress County School System would the Board's termination of his employment without affording him the protections to which tenure entitled him constitute a denial of due process. The sole issue on this appeal is whether the district court properly concluded that Pennycuff did not attain tenure as a teacher in the Fentress County School System under the provisions of the Tennessee Teacher Tenure Law, Tenn. Code Ann. §§ 49-5-501, *et seq.*

## II.

We review de novo a district court's grant of summary judgment, using the same standard under Rule 56(c) used by the district court. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III.

We first address Pennycuff's claim that he attained tenure pursuant to Tenn. Code Ann. §§ 49-5-503(2) and 504(b). The criteria for attaining "permanent tenure" are listed in Tenn. Code Ann. § 49-5-503(2). They include the requirement that a teacher must complete a three-year probationary period in order to qualify for tenure. Tenn. Code Ann. § 49-5-503(2)(C). Tenn. Code Ann. § 49-5-504(b) then provides:

> Upon completion of the probationary period, any teacher who is reemployed or retained in the system is entitled to the tenure status for which such teacher is qualified by college training and licensing; *provided, that the director of schools shall notify the board prior to reelection by the board that the teacher, if reelected, will attain tenure status.*

Tenn. Code Ann. § 49-5-504(b) (emphasis added). References to the director of schools in the Tennessee Teacher Tenure Law are deemed to be references to the superintendent as those terms are used interchangeably in the statute. *See* Tenn. Code Ann. § 49-2-203(a)(14)(A).

Although the record reflects that Pennycuff completed the three year probationary period at the end of the 1995-96 school year and even that he was automatically rehired as if he had tenure for the 1996-97 and 1997-98 school years, it is undisputed that the superintendent never notified the Board prior to their rehiring Pennycuff that his reemployment for that school year would confer tenure. In examining Tenn. Code Ann. § 49-5-504(b), the Supreme Court of Tennessee observed, the "sole, and . . . self-evident, purpose of this proviso is to insure that the board knows that re-employment will confer tenure." *Bowden*, 29 S.W.3d at 465 (quoting *Sanders v. Vinson*, 558 S.W.2d 838, 843 (Tenn. 1977)). Noting its holding in *Reeves v. Etowah City Sch. Bd. of Educ.*, 806 S.W.2d 176, 179 (Tenn. 1991), that "Tenn.Code Ann. § 49-5-504(b), which requires notice by the superintendent, *is a limitation on Tenn.Code Ann. § 49-5-503(2)*, which grants permanent tenure status when a teacher is reemployed after the probationary period," the *Bowden* court explicitly held that notification by the superintendent under Tenn. Code Ann. § 49-5-504(b) is required before a teacher can attain permanent tenure, even if that teacher has satisfied the criteria for permanent tenure set forth in Tenn. Code Ann. § 49-5-503(2)(A)-(D). *Bowden*, 29 S.W.3d at 466. To hold, as Bowden urged, that notification by the superintendent does not impose a condition upon attaining tenure, the court said, would be to render the language of § 49-5-504(b) surplusage.

Pennycuff argues that *Bowden* is distinguishable on its facts because, unlike the situation in *Bowden*, the Fentress County Board knew his status and treated him as tenured. We find Pennycuff's arguments unpersuasive. Pennycuff has not demonstrated that the Board knew that its act of continuing his employment would confer tenure and we do not believe that simply treating Pennycuff for a time as if he had tenure is the legal equivalent of conferring tenure upon him, particularly under the circumstances of this case, where the fact of tenure has been in hot dispute for years. Accordingly, we conclude that the district court properly determined that Pennycuff had not attained tenure under Tenn. Code Ann. §§ 49-5-503(2) and 504(b), and no genuine issue with respect to that fact remains for trial.

### IV.

We next address Pennycuff's claim that he attained tenure under Tenn. Code Ann. § 49-5-509 through the Board's "transfer" of tenure on August 30, 1994. This statute provides: "Tenured teachers moving to another system shall serve the regular probationary period in the new system. The local board of education, *upon the recommendation of the director of schools*, may waive this requirement and grant tenure status or shorten the probationary period, as it sees fit." Tenn. Code Ann. § 49-5-509 (emphasis added). Notwithstanding that there is no provision in the Tennessee Teacher Tenure Law permitting the "transfer" of tenure from one school district to another,

Pennycuff argues that the Board attempted to "grant" him tenure in lieu of the probationary period requirement when it voted to "transfer" his tenure.

It is undisputed in this case that Wright, then Superintendent of Schools, did not recommend a waiver of the probationary period requirement when, at the August 30, 1994, meeting of the Board, Stults moved to "transfer tenure from the Oneida School System to the Fentress County School System" for Pennycuff. While we have found no Tennessee cases interpreting Tenn. Code Ann. § 49-5-509, the Tennessee Supreme Court's discussion of Tenn. Code Ann. § 49-5-504(b) in *Bowden* is instructive: "[a] basic principle of statutory construction is to ascertain and give effect to legislative intent without unduly restricting or expanding the intended scope of a statute. This means that the Court must examine the language of a statute and, if unambiguous, apply its ordinary and plain meaning." *Bowden*, 29 S.W.3d at 465 (internal citation omitted).

The language of Tenn. Code Ann. § 49-5-509 at issue here—"upon the recommendation of the superintendent"—like the language of Tenn. Code Ann. § 49-5-504(b) at issue in *Bowden*, imposes a condition on attaining tenure. To read it otherwise would be to render it surplusage and of no effect. Significantly, the Tennessee Attorney General has concluded, in the context of another provision, that "the ordinary and natural meaning of the statutory provision that the local board grants tenure to a teacher 'upon the recommendation of the superintendent' is that tenure shall be given only when the superintendent favorably recommends it and the board approves." 1998 Tenn. AG LEXIS 9. Pennycuff nevertheless relies on *Sanders*, in which the Supreme Court of Tennessee, in interpreting the predecessor provision to Tenn. Code Ann. § 49-5-504(b), stated that "the absence of [the superintendent's] recommendation is irrelevant to the issue of tenure." *Sanders*, 558 S.W.2d at 843. But, as the district court correctly held, the statute interpreted in *Sanders* contained no affirmative requirement that the superintendent make a recommendation that tenure be granted, and the statute at issue before us here explicitly requires that recommendation.

We conclude that because the statute required the recommendation of the superintendent before tenure could be conferred, and no such recommendation was given by the superintendent in this case, the district court properly concluded that Pennycuff did not attain tenure under Tenn. Code Ann. § 49-5-509, and no genuine issue with regard to that fact remains for trial.

## V.

Pennycuff's final argument is that the Fentress County Board is judicially estopped from denying him tenure. Pennycuff's complaint in the first Chancery Court action asserted, in the third sentence of the fifth paragraph, that "[o]n August 30, 1994, Pennycuff acquired tenure as an educator in the Fentress County School System." In their amended answer, the defendants stated, "[t]he allegations contained in sentence three paragraph 5 of the complaint are admitted." Pennycuff now claims that this was a binding judicial admission and that principles of estoppel should prevent the Board from denying in the case before us here that he has attained tenure.

"Judicial estoppel forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by that same party in an earlier proceeding." *Warda v. C.I.R.*, 15 F.3d 533, 538 (6th Cir. 1994). "Federal standards govern the application of judicial estoppel in federal court." *Id.* at n.4 (citing *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 n.4 (6th Cir. 1982)).

The Supreme Court has developed three factors we are to consider when determining whether to apply the doctrine of judicial estoppel. *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). "First, a party's later position must be 'clearly inconsistent' with its earlier position." *Id.* (quoting *United States v. Hook*, 195 F.3d 299, 306 (7th Cir. 1999)). Second, we may consider whether the party had successfully persuaded a court to accept his previous position, "so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that the first

or the second court was misled.'" *Id.* (quoting *Edwards*, 690 F.2d at 599). Finally, we may consider "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 751. We have placed particular emphasis on the second factor, stating that "judicial estoppel governs a dispute only if the first court 'adopted the position urged by the party, either as a preliminary matter or as part of a final disposition.'" *Warda*, 15 F.3d at 538 (quoting *Teledyne Indus. v. National Labor Relations Bd.*, 911 F.2d 1214, 1218 (6th Cir. 1990)).

The defendants' position that Pennycuff is not a tenured teacher is "clearly inconsistent" with their earlier admission in Pennycuff's first Chancery Court action that Pennycuff had acquired tenure on August 30, 1994. There is, however, no evidence that the Chancery Court accepted or relied upon the defendants' admission that Pennycuff was a tenured teacher. Indeed, the record before us does not indicate that the Chancery Court has ever ruled in that action. The *quo warranto* proceeding in the Chancery Court dealt exclusively with the constitutionality of the Private Act that had authorized the election of the ten-member Board, and Pennycuff's tenure–the sole issue in this appeal–was not at issue in the state proceeding.

Judicial estoppel generally forbids only the use of "intentional self-contradiction . . . as a means of obtaining unfair advantage." *See New Hampshire*, 532 U.S. at 751 (quoting *Scarano v. Central R. Co. of N.J.*, 203 F.2d 510, 513 (3rd Cir. 1953)). Here, however, the defendants relied on the advice of counsel in filing the answer containing the admission regarding Pennycuff's tenure. Their change of position came only after the Chancery Court held that the Private Act creating the ten-member board was unconstitutional and the Board, now reduced to five members, sought an opinion from new counsel regarding Pennycuff's tenure.

This is not a situation in the which the defendants are attempting to "play [] 'fast and loose with the courts,'" or "'blow [] hot and cold as the occasion demands.'" *Reynolds v. C.I.R.*, 861 F.2d 469, 472 (6th Cir. 1988) (internal citations omitted). Judicial estoppel is an equitable doctrine to be invoked by this court at its discretion. *New Hampshire*, 532 U.S. at 750. Because the Board's prior admission that Pennycuff was a tenured teacher was made on the advice of counsel in a proceeding in which Pennycuff's tenure was not at issue, we decline to invoke the doctrine of judicial estoppel here.

## VI.

For the foregoing reasons, we conclude that Pennycuff was not a tenured teacher in the Fentress County School System when the Board terminated his employment. We therefore **AFFIRM** the judgment of the district court.