In re Barbara M. JOHNSON, Debtor.

Barbara M. Johnson, Plaintiff,

v.

Lewis Cass Intermediate School District and Kevin Magin, Defendants.

Bankruptcy No. GK 04–02982. Adversary No. 05–80121.

United States Bankruptcy Court, W.D. Michigan.

July 14, 2006.

818

Joseph Sukup, Grand Rapids, MI, for Marcia R. Meoli, Chapter 7 Trustee.

James S. Jamo, Lansing, MI, for Defendant Lewis Cass Intermediate School District.

Gary P. Bartosiewicz, Kalamazoo, MI, for Defendant Kevin Magin.

## OPINION REGARDING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ON BASIS OF JUDICIAL ESTOPPEL

JAMES D. GREGG, Bankruptcy Judge.

### I. JURISDICTION

The court has jurisdiction over this bankruptcy case. 28 U.S.C. § 1334. The case and all related proceedings have been referred to this court for decision. 28 U.S.C. § 157(a) and L.R. 83.2(a) (W.D.Mich.). This adversary proceeding is a core proceeding because it involves the administration of the debtor's estate, 28 U.S.C. § 157(b)(2)(A), and affects the liquidation of the assets of the estate and the debtor-creditor relationships, 28 U.S.C. § 157(b)(2)(O).

### II. ISSUE

Does the doctrine of judicial estoppel bar Barbara M. Johnson (the "Debt-

or")[1] from pursuing prepetition wrongful discharge claims against the Lewis Cass Intermediate School District and Kevin Magin (collectively, the "Defendants") when the Debtor deliberately failed to disclose the cause of action as an asset in her bankruptcy case?

## III. FACTS AND PROCEDURAL BACKGROUND

The Debtor began working for the Lewis Cass Intermediate School District ("LCISD") as a social worker in 1994. In 2001, the Debtor became LCISD's Family and Child Services Coordinator. She worked for LCISD in that capacity until September 2003. Kevin Magin became the Debtor's supervisor when he was hired as LCISD's Special Education Director and Assistant Superintendent in 2000. Magin was later promoted to Superintendent of LCISD. On July 24, 2003, the LCISD Board of Education (the "Board") voted not to renew the Debtor's employment contract. According to the summary judgment record, the Board's decision was based primarily on evidence that the Debtor had used LCISD credit cards for nonbusiness related personal expenses. The Debtor does not dispute that she used the credit cards for personal purposes, but

alleges that Magin provided her with the credit cards in lieu of a raise and implicitly approved all of her expenditures. The Debtor also alleges that Magin only initiated the investigation into the misuse of the LCISD credit cards after she reported Magin's inappropriate behavior and his misuse of funds to the Board. On October 21, 2003, the Debtor filed a complaint against the Defendants in the United States District Court for the Western District of Michigan (the "District Court"). In that complaint, the Debtor alleges that the non-renewal of her contract was arbitrary and capricious under Mich. Comp. Laws Ann. § 380.1229, violated her civil rights under 42 U.S.C. § 1983, and contravened the Michigan Whistleblowers' Protection Act, Mich. Comp. Laws Ann. § 15.361 et seq. (collectively, the "wrongful discharge action"). Among other things, the complaint requests that the Debtor's employment be reinstated and that the Debtor be awarded damages for lost wages and benefits. The Debtor also seeks exemplary and punitive damages.

On March 11, 2004, less than five months after the commencement of the wrongful discharge action, the Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code.[2] Although the Debtor's

---

1. On January 6, 2005, the Debtor filed a Motion for Leave to File First Amended Complaint which sought to substitute the chapter 7 trustee ("Trustee") for the Debtor as plaintiff in this adversary proceeding. (AP Dkt. No. 97.) Because the Debtor's motion remains pending and no hearing was requested, the Trustee is not the party-plaintiff in this adversary proceeding. However, "it is well settled that the right to pursue [prepetition] causes of action formerly belonging to the debtor ... vests in the trustee for the benefit of the estate." *Waldschmidt v. Commerce Union Bank (In re Bauer)*, 859 F.2d 438, 441 (6th Cir.1988) (citation omitted); *see Honigman v. Comerica Bank (In re Van Dresser Corp.)*, 128 F.3d 945, 947 (6th Cir.1997). Accordingly, the Trustee's attorney has participated in the

adversary proceeding by appearing at hearings after the case was referred to the bankruptcy court. The court has considered the interests of the Trustee and the bankruptcy estate in its judicial estoppel analysis, and the result would not be different if the Trustee was officially substituted as the party-plaintiff in this adversary proceeding. *See infra* note 7.

2. The Bankruptcy Code is contained in 11 U.S.C. §§ 101–1330. Unless stated to the contrary, all future statutory references are to the Bankruptcy Code, e.g., "§ ___." This case was filed before the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") generally became effective on October 17, 2005. All subsequent statuto-

wrongful discharge action was pending in the District Court at the time her bankruptcy case was filed, her cause of action against the Defendants was purposely omitted in her bankruptcy petition, schedules, and statement of financial affairs. A statement of financial affairs requires all debtors, including this Debtor, to "[l]ist all suits and administrative proceedings to which the debtor is or was a party within one year" preceding the filing of her bankruptcy case. Although the Debtor chose not to list the wrongful discharge action, it is noteworthy that she listed a small claims collection suit initiated by an entity identified as "Servpro" and stated it was "settled (paid)." (Dkt. No. 1.) In Schedule B ¶ 20, which requires the Debtor to list "[o]ther contingent and unliquidated claims of every nature ..." she stated "NONE." (*Id.*)

The Debtor freely admits that the wrongful discharge action was not disclosed in any of her bankruptcy papers. She also acknowledges that she signed her bankruptcy petition, schedules, and statement of affairs under penalty of perjury. To justify her knowing nondisclosure, she blames her bankruptcy attorney, James Boardman, Esq. ("Boardman"). The Debtor asserts that she told Boardman about the wrongful discharge action. Boardman allegedly advised the Debtor that the lawsuit was too "far out" and "unpredictable" to be disclosed as an asset in her bankruptcy case. (Johnson Dep. 109–11, Jan. 20, 2005.) After Boardman prepared the bankruptcy paperwork that failed to mention the wrongful discharge action, the Debtor states she simply signed the documents without reading them. (*Id.* at 64–67.)

Marcia R. Meoli was appointed as the Trustee in the Debtor's bankruptcy case, and a § 341 Meeting of Creditors was held. At the § 341 meeting, the Debtor testified, under penalty of perjury, that she had carefully reviewed the information on her bankruptcy schedules and she testified that the information was true and accurate. (Johnson Dep. 70, Jan. 20, 2005.) The Debtor and the Trustee also discussed the Debtor's unsuccessful litigation arising from fires at the Debtor's residence and the completion of the Servpro suit that was disclosed on the statement of financial affairs. (*Id.* at 81–83.) Notwithstanding the Trustee's questions about those lawsuits, the Debtor again failed to disclose the wrongful discharge action. On July 21, 2004, the Debtor received her chapter 7 discharge. Unaware of the pending District Court lawsuit, the Trustee filed a no asset report on September 2, 2004. The court entered a final decree and order closing the case on September 8, 2004.

In October or November 2004, through discovery conducted in the wrongful discharge action, the Defendants first learned of the Debtor's bankruptcy filing. Shortly thereafter, on November 19, 2004, both Defendants filed motions to dismiss or for summary judgment in the District Court.[3] (AP Dkt. No. 73 & 76.) As one reason for summary judgment, the Defendants asserted that the Debtor should be judicially estopped from pursuing her claims against the Defendants.

Only after the Defendants raised the issue of judicial estoppel, Judy E. Bregman, Esq. ("Bregman") the Debtor's attor-

---

ry references are to the pre-BAPCPA version of the Bankruptcy Code.

**3.** Although LCISD's motion is titled a motion to dismiss, it requests both dismissal under

FED. R. CIV. P. 12(b) and summary judgment under FED. R. CIV. P. 56. In this opinion, both Defendants' motions are treated as motions for summary judgment.

ney of record in the District Court, contacted the Trustee and told the Trustee of the Debtor's undisclosed wrongful discharge action. On November 30, 2004, the Trustee filed a motion to reopen the Debtor's chapter 7 case. This bankruptcy court granted the Trustee's motion. The case was reopened on December 14, 2004.

On January 19, 2005, the Trustee filed a Notice of Possible Dividends to Creditors and a claims bar date was established. Six claims have been filed thus far: a $2,239.91 secured claim by Berrien Teacher's Credit Union; a $9,985.76 unsecured claim by Sallie Mae Trust; a $9,482.77 unsecured claim by Citibank, N.A.; a $75,701.40 *secured* claim by Bregman; [4] an $8,226.85 unsecured claim by Toyota Motor Credit Corporation; and a $2,149.96 unsecured claim by Berrien Teacher's Credit Union. The Debtor's schedules have not been amended to include the wrongful discharge action or to add the debt to Bregman.

On January 10, 2005, the District Court held a hearing on the Defendants' summary judgment motions. After the hearing, and without deciding the motions, the District Court entered an order referring the proceeding to this court. (AP Dkt. No. 120, Feb. 7, 2005.) The District Court subsequently denied LCISD's motion to withdraw the reference. (AP Dkt. No. 127, Apr. 20, 2005.)

A status conference to discuss this adversary proceeding took place on July 27, 2005. On September 16, 2005, this court entered a scheduling order permitting supplemental briefing on the motions for summary judgment. A lengthy hearing on the motions was held on November 16, 2005. Another status conference regarding Bregman's involvement occurred on January 11, 2006. Obtaining complete information from Bregman was an unnecessarily slow

process. The motions were then taken under advisement.

## IV. DISCUSSION

### A. *Summary Judgment Standard.*

Motions for summary judgment are governed by Federal Rule of Civil Procedure 56(c). FED. R. BANKR. P. 7056. Under Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Succinctly stated, when reviewing a motion for summary judgment, the court must construe "the evidence, all facts, and any inferences that may be drawn from the facts ... in the light most favorable to the nonmoving party." *Poss v. Morris (In re Morris),* 260 F.3d 654, 665 (6th Cir.2001) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). This court has followed this standard.

### B. *Judicial Estoppel.*

The doctrine of judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine,* 532 U.S. 742, 749, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001) (quoting *Pegram v. Herdrich,* 530 U.S. 211, 227 n. 8, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000)). The purpose of the doctrine is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id.* at 749–50, 121 S.Ct. 1808 (citations and internal quo-

---

**4.** The Debtor's schedules do not disclose any debt to Bregman.

tation marks omitted). The Sixth Circuit Court of Appeals "has previously described judicial estoppel as a rule against 'playing fast and loose with the courts,' 'blowing hot and cold as the occasion demands,' or 'hav[ing] [one's] cake and eat[ing] it too.'" *Lewis v. Weyerhaeuser Co.*, 141 Fed.Appx. 420, 424 (6th Cir.2005) (quoting *Reynolds v. Comm'r*, 861 F.2d 469, 472 (6th Cir.1988)).

■ Judicial estoppel is an "equitable doctrine" to be "invoked by a court at its discretion," and there are no "inflexible prerequisites" or "exhaustive formula[s]" for determining its applicability. *New Hampshire*, 532 U.S. at 750–51, 121 S.Ct. 1808. This court believes application of the doctrine requires an inquiry regarding the relevant factual circumstances. Judicial estoppel generally "bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'" *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir.2002) (quoting *Teledyne Indus., Inc., v. NLRB*, 911 F.2d 1214, 1218 (6th Cir.1990)). These two requirements are easily met based upon the uncontested facts in this adversary proceeding.

■ 11 U.S.C. § 521(1) requires debtors to file "a schedule of assets and liabilities." 11 U.S.C. § 521(1). It is well settled that causes of action are among the assets that must be disclosed on a debtor's schedules. *See Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 207–08 (5th Cir.1999). Although the wrongful discharge action was pending and undoubtedly known to the Debtor when she filed her bankruptcy case, her schedules and statement of financial affairs do not mention the action. Submission of bankruptcy papers is very important; the

Debtor signed and certified the papers under penalty of perjury. The failure to schedule her cause of action against the Defendants qualifies as a "prior position" which is inconsistent with now seeking a recovery from the wrongful discharge action. *Eubanks v. CBSK Fin. Group, Inc.*, 385 F.3d 894, 898 (6th Cir.2004); *Browning*, 283 F.3d at 775. This court implicitly accepted the statements in the Debtor's schedules and statement of financial affairs when it granted her a discharge of debts. *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1048 (8th Cir.2006) ("[W]here the bankruptcy court issues a 'no asset' discharge, the bankruptcy court has effectively adopted the debtor's position.") (citation omitted); *see also Reynolds*, 861 F.2d at 473 ("judicial acceptance means only that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition;" bankruptcy court approval of a payment from the bankruptcy estate based on a party's assertion of a given position constitutes acceptance of the position for purposes of judicial estoppel); *Tyler v. Fed. Express Corp.*, 420 F.Supp.2d 849, 856 (W.D.Tenn.2005) (confirmation of chapter 13 plan which omitted cause of action constitutes acceptance of the debtor's contrary position).

■ Many courts, including the Sixth Circuit Court of Appeals, have held that the application of "judicial estoppel is inappropriate in cases of conduct amounting to nothing more than mistake or inadvertence." *Browning*, 283 F.3d at 776 (citing *United States v. Hussein*, 178 F.3d 125, 130 (2d Cir.1999); *King v. Herbert J. Thomas Mem'l Hosp.*, 159 F.3d 192, 196–97 (4th Cir.1998); *Helfand v. Gerson*, 105 F.3d 530, 536 (9th Cir.1997)). A debtor's failure to disclose a cause of action might be deemed inadvertent "where the debtor lacks knowledge of the factual basis of the undisclosed claims" or where there is "no

motive for concealment." *Browning,* 283 F.3d at 776 (citing *In re Coastal Plains, Inc.,* 179 F.3d at 210). Application of judicial estoppel may also be inappropriate when a debtor's failure to disclose occurred in the "absence of bad faith." *Eubanks,* 385 F.3d at 895. For instance, a court may refuse to apply judicial estoppel if the debtor does not actively conceal the asset and instead takes timely *affirmative* action to fully inform the court and the trustee of the asset's existence. *Id.* at 898.

In this adversary proceeding, there is absolutely no question that the Debtor knew the factual basis of the undisclosed claims when she filed her bankruptcy petition. At the commencement of her bankruptcy case, the Debtor had already filed, and was actively pursuing, her wrongful discharge action against the Defendants in the District Court. The Debtor's deposition testimony, in which she claims to have informed her bankruptcy attorney of the pending wrongful discharge action prior to filing her petition, conclusively establishes the Debtor's knowledge of the undisclosed cause of action. (Johnson Dep. 109–11, Jan. 20, 2005.)

Based upon the summary judgment record, the Debtor also had a motive to conceal the wrongful discharge action. If the Defendants had not discovered the Debtor's bankruptcy, raised the issue of judicial estoppel, and thereby compelled the Debtor to belatedly disclose the existence of the pending action to the Trustee, the Debtor would have strolled away from her chapter 7 case with a discharge of her debts. The Debtor would have retained any subsequent monetary recovery from the wrongful discharge action and her creditors would have received nothing. This is precisely the type of "windfall" judicial estoppel seeks to prevent. *Cf. Browning,* 283 F.3d at 776 (debtor in possession would "receive no windfall as a result of its failure to disclose its claims;" under confirmed chapter 11 plan, estate assets, including any potential recovery from undisclosed claim, were to be liquidated and distributed to creditors). As explained by the Fifth Circuit Court of Appeals:

> The rationale for ... decisions [invoking judicial estoppel to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim after emerging from bankruptcy] is that the *integrity of the bankruptcy system depends on full and honest disclosure by debtors of all of their assets.* The courts will not permit a debtor to obtain relief from the bankruptcy court by representing that no claims exist and then subsequently to assert those claims for his own benefit in a separate proceeding.

*In re Coastal Plains, Inc.,* 179 F.3d at 208 (quoting *Rosenshein v. Kleban,* 918 F.Supp. 98, 104 (S.D.N.Y.1996)). Thus, the Debtor's knowledge of her claims against the Defendants and her motive to conceal them in her bankruptcy case mandates applying judicial estoppel in this adversary proceeding.

However, under the Sixth Circuit's decision in *Eubanks,* the Debtor may still prove that her failure to disclose the cause of action against the Defendants was inadvertent. This may be accomplished by demonstrating that the omission occurred in the "absence of bad faith." *Eubanks,* 385 F.3d at 895. In *Eubanks,* the debtors omitted a potential lender liability claim from their chapter 7 bankruptcy petition. Despite this omission, the debtors took "constant affirmative actions" which "clearly establish[ed] a desire to apprise the court of the pending claim." *Id.* at 899 n. 2. These actions included: advising the trustee of the claim at the § 341 meeting, forwarding documentation regarding the claim to the trustee, contacting the trustee several times to check on the status of the claim, amending their schedules to add the defendant as a creditor, asking the bank-

ruptcy court for a status conference on the claim, filing a motion to allow the trustee to be substituted as the plaintiff in the lender liability action, and attempting to amend the schedules a second time to add the lender liability claim as a potential asset. *Id.* at 895–97. Not only did these actions evidence "no motive or intention to conceal the potential claim," they fully supported the debtors' assertion that their failure to schedule the claim was inadvertent. *Id.* at 897–99. Accordingly, the Sixth Circuit reversed the decision which applied judicial estoppel to prevent the debtors from pursuing their lender liability claim. *Id.* at 899.

In stark contrast to the debtors in *Eubanks*, this Debtor did not take any type of "constant affirmative actions" to disclose her wrongful discharge claims. She did not inform the Trustee at the § 341 meeting, even when questioned about other causes of action. She has never amended her schedules to include the wrongful discharge claim. And the timing of the belated disclosure is noteworthy: the Debtor only informed the Trustee of the pending litigation *after* the Defendants raised the issue of judicial estoppel in the District Court. There exists no evidence from which this court may infer a good faith mistake or inadvertence. Indeed,

> [a]llowing [a debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them. This so-called remedy would only diminish the necessary incentive to provide the bankruptcy court with a truthful disclosure of the debtors' assets.

*Tyler,* 420 F.Supp.2d at 859 (quoting *Billups v. Pemco Aeroplex, Inc. (In re Burnes),* 291 F.3d 1282, 1288 (11th Cir. 2002)); *Scoggins v. Arrow Trucking Co.,* 92 F.Supp.2d 1372, 1376 (S.D.Ga.2000) (A debtor "should not be allowed to duck his bankruptcy court disclosure obligation, then 'fess up' without consequence once exposed by his adversary.").

The sole excuse offered by the Debtor for her failure to disclose is that she was acting upon the advice of Boardman, her bankruptcy attorney. This excuse carries no weight in these circumstances.[5] The Supreme Court has held that a litigant is bound by the errors and omissions of his or her attorney. *Link v. Wabash R.R. Co.,* 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) (A litigant who voluntarily chooses an attorney as her representative cannot later "avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent ....") (citing *Smith v. Ayer,* 101 U.S. 320, 326, 25 L.Ed. 955 (1879)); *see also Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship,* 507 U.S. 380, 397, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (reiterating, in the context of determining whether failure to file a proof of claim before the bar date constituted excusable neglect, that clients are "held accountable for the acts and omissions of their chosen counsel"). Accordingly, the failure of the Debtor's attorney to schedule the wrongful discharge action despite the Debtor's assertion that she specifically advised him of the suit is "no pancea." *Barger v. City of Cartersville, Ga.,* 348 F.3d 1289, 1295 (11th Cir.2003). Having chosen Boardman to represent her in her bankruptcy case, the Debtor must accept the consequences of heeding his alleged advice.

---

**5.** *If* the Debtor had disclosed the action when discussing other lawsuits with the Trustee at the § 341 meeting, it would be a much more difficult decision.

The Debtor signed her bankruptcy petition under penalty of perjury. By doing so, she certified that she had no claims against the Defendants. It was the Debtor's responsibility to verify the accuracy of the information contained in her schedules and statement of financial affairs and she "had the duty to carefully consider all of the questions posed and to see that they [were] completely and correctly answered." *See Warsco v. Saylor (In re Saylor)*, 339 B.R. 190, 193 (Bankr.N.D.Ind. 2006) (revoking debtors' discharge for failure to disclose assets and rejecting debtors' argument that their attorney was to blame for inaccuracies in their bankruptcy schedules). Under these uncontested facts, the Debtor may not avoid the consequences of her misrepresentation by blaming her bankruptcy attorney.[6]

## V. CONCLUSION

Judicial estoppel has been described as "encompass[ing] an amorphous variety of different situations that revolve around the concern for preserving the integrity of the judicial process." Christopher Klein, Lawrence Ponoroff & Sarah Borrey, *Principles of Preclusion and Estoppel in Bankruptcy Cases*, 79 Am. Bankr.L.J. 839, 864–65 (2005). When it comes to protecting the integrity of the "bankruptcy system and the ends it seeks to achieve, the importance of [a debtor's duty to disclose assets] cannot be overemphasized." *In re Coastal Plains, Inc.*, 179 F.3d at 208 (citing *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir.1988)). The Debtor in this adversary proceeding knowingly, and without legal justification, failed to disclose the wrongful discharge action in her bankruptcy case. The Debtor had a motive to conceal the claims and has offered no other evidence from which the court can discern good faith inadvertence. Under these circumstances, the court finds the Debtor is in bad faith and application of judicial estoppel is warranted.[7] The Defendants' motions for summary judgment are GRANTED. A separate order shall be entered accordingly.

6. In a recent unpublished decision, the Sixth Circuit discussed the application of *Link* in judicial estoppel cases. *See Lewis v. Weyerhaeuser Co.*, 141 Fed.Appx. 420, 428 (6th Cir. 2005). The debtor in *Lewis* argued that her failure to disclose claims against a former employer in her bankruptcy case was inadvertent and in good faith because she acted on the advice of her bankruptcy attorney. The court properly rejected this assertion and concluded that judicial estoppel barred the debtor from pursuing the undisclosed claims. In so holding, the court distinguished *Pennycuff v. Fentress County Bd. of Educ.*, 404 F.3d 447 (6th Cir.2005), in which the Sixth Circuit had refused to apply judicial estoppel where a prior admission had been made on the advice of counsel. The *Lewis* court reasoned that, unlike the representations in *Pennycuff*, the debtor's failure to disclose assets was highly relevant to her bankruptcy case. In addition, the facts in *Lewis* suggested that the debtor acted intentionally and in bad faith. Those same considerations lead this court to conclude that application of *Link* is compelled in this adversary proceeding.

7. Because the purpose of judicial estoppel is to prevent litigants from compromising the judicial system through dishonest gamesmanship, this court's analysis has focused on the Debtor's conduct. The potential prejudice to the Debtor's bankruptcy estate is also an obvious concern when applying judicial estoppel in bankruptcy cases. However, that issue was not raised by the Trustee in a formal pleading. It has similarly not been squarely addressed in the Sixth Circuit case law.

Nonetheless, this court has considered the potential effect of its decision on the Debtor's estate. Under the factual circumstances presented here, consideration of the interests of creditors does not change the outcome of the court's equitable analysis. The Debtor has relatively few creditors and the major creditor is the Debtor's attorney in the District Court

action. When weighed against the Debtor's dishonest conduct in failing to disclose the wrongful discharge action to this court and the Trustee, the balance of the equities favors application of judicial estoppel.