# STATE OF MICHIGAN

# COURT OF APPEALS

CONNIE CROSS,

        Plaintiff-Appellee,

v

EARL BURHANS, D.O., and WESTSIDE
FAMILY MEDICAL CENTER, PC,

        Defendants-Appellants.

UNPUBLISHED
December 13, 2016

No. 328019
Kalamazoo Circuit Court
LC No. 2012-000610-NO

---

CONNIE CROSS,

        Plaintiff-Appellee,

v

EARL BURHANS, D.O.,

        Defendant,

and

WESTSIDE FAMILY MEDICAL CENTER, PC,

        Defendant-Appellant.

No. 328598
Kalamazoo Circuit Court
LC No. 2012-000610-NO

---

Before: SHAPIRO, P.J., and HOEKSTRA and SERVITTO, JJ.

PER CURIAM.

In Docket No. 328019, defendants, Earl Burhans, D.O., and Westside Family Medical Center, PC (Westside), appeal by leave granted the June 2, 2015 orders of the trial court that denied Dr. Burhans's motions for summary disposition based on the statute of limitations and judicial estoppel. In Docket No. 328598, Westside appeals by leave granted the orders denying its motions concurring in Dr. Burhans's motions for summary disposition. We affirm and remand for further proceedings consistent with this opinion.

-1-

This case involves an alleged "wrongful/inappropriate" relationship between Dr. Burhans and plaintiff. Plaintiff suffers from migraines. Dr. Burhans, who was employed by Westside, became plaintiff's primary care physician in 2004. Plaintiff testified that Dr. Burhans first "overstepped the boundary" in April 2007 when he groped and kissed her. Plaintiff and Dr. Burhans first had sexual intercourse at Westside in April or May 2008 and, thereafter, they had sexual intercourse each time that plaintiff came to Westside with a migraine. They also had sexual intercourse almost every Thursday and Sunday at plaintiff's parents' house, where plaintiff resided. Plaintiff testified that she never enjoyed the sexual relationship with Dr. Burhans but that she kept Dr. Burhans as her primary care physician because she did not believe that another physician would give her the prescriptions for pain medication that she received from Dr. Burhans. According to plaintiff, she received the prescriptions that she needed from Dr. Burhans, but she paid for them with sex.

In March 2009, plaintiff filed a petition for Chapter 7 bankruptcy. In July 2009, the bankruptcy court granted plaintiff a discharge, and it subsequently closed the bankruptcy case. Plaintiff acknowledged that she did not disclose any causes of action against defendant in the bankruptcy proceedings prior to discharge. Plaintiff averred that she "truly believed that if [she] were to have told the Bankruptcy Trustee about [her] potential claim against Dr. Burhans, and Dr. Burhans found out about it, then Dr. Burhans [and the other physicians at Westside] would refuse to provide [her] with health care and pain medication."

In December 2012, plaintiff sued defendants. Following plaintiff's deposition, Dr. Burhans moved for summary disposition, arguing that plaintiff lacked standing and that plaintiff's claims were barred by judicial estoppel, as well as other legal doctrines. The basis for the summary disposition motion, with which Westside concurred, was that plaintiff failed to disclose her claims against defendants in the bankruptcy proceedings. Thereafter, plaintiff moved the bankruptcy court to reopen the bankruptcy case. The bankruptcy court granted the motion, and in March 2015, the bankruptcy trustee abandoned the property known as the Kalamazoo County case. Dr. Burhans thereafter renewed his motion for summary disposition, contending that plaintiff's claims were barred by the statute of limitations because the trustee did not abandon the claims until *after* the applicable limitations periods expired and additionally argued that judicial estoppel precluded plaintiff's claims. Westside again concurred in the motion and the trial court again denied summary disposition to defendants.

On appeal, defendants argue that the trial court erred in denying them summary disposition on the basis of the statute of limitations and judicial estoppel. Summary disposition is proper under MCR 2.116(C)(7) if the plaintiff's claims are barred by the statute of limitations or judicial estoppel. We review de novo a trial court's decision on a motion for summary disposition. *Moser v Detroit*, 284 Mich App 536, 538; 772 NW2d 823 (2009). In reviewing a motion for summary disposition under MCR 2.116(C)(7), a court must consider any affidavits, depositions, admissions, or other documentary evidence submitted by the parties. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). If no facts are in dispute, and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court. *Dextrom v Wexford Co*, 287 Mich App 406, 431; 789 NW2d 211 (2010). But, if a question of fact exists so that factual development could provide a basis for recovery, then dismissal without further factual development is inappropriate. *Id.*

Judicial estoppel is an equitable doctrine. *Szyszlo v Akowitz*, 296 Mich App 40, 46; 818 NW2d 424 (2012). The application of legal doctrines, including judicial estoppel, is reviewed de novo. *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008); *Szyszlo*, 296 Mich App at 46.[1]

In response, plaintiff first argues that defendants waived the affirmative defenses of lack of standing and judicial estoppel.[2] "Affirmative defenses must be stated in a party's responsive pleading, either as originally filed or as amended in accordance with MCR 2.118." MCR 2.111(F)(3). The failure to do so constitutes a waiver of the defense. *Stanke v State Farm Mut Auto Ins Co*, 200 Mich App 307, 311-312; 503 NW2d 758 (1993). In a pleading, a party "must state the facts" constituting an affirmative defense. MCR 2.111(F)(3)(a); see also *Tyra v Organ Procurement Agency of Mich*, 302 Mich App 208, 214; 850 NW2d 667 (2013), rev'd on other grounds 498 Mich 68 (2015) ("[A] statement of an affirmative defense must contain facts setting forth *why and how* the party asserting it believes the affirmative defense is applicable."). We agree with plaintiff that defendants did not adequately plead the relevant affirmative defenses. Defendants did not set forth "why and how" they believed that the defenses were applicable. *Tyra*, 302 Mich App at 214. Rather, defendants simply stated that the claims alleged "are barred by the running of the applicable statutes of limitation," and, potentially interpretable as a judicial estoppel defense, the claim "is barred by the fraudulent acts of the Plaintiff."

"[A] defendant may move to amend their affirmative defenses to add any that become apparent at any time[.]" *Id.* at 213. After plaintiff argued in response to Dr. Burhans's motion for summary disposition that defendants waived the defenses of lack of standing and judicial estoppel, Dr. Burhans, in a reply to plaintiff's response, requested leave to amend defendants' affirmative defenses. Had the trial court addressed the request for leave to amend, its decision would have been reviewed for an abuse of discretion. *Weymers v Khera*, 454 Mich 639, 654; 563 NW2d 647 (1997). Leave to amend "shall be freely given when justice so requires." MCR 2.118(A)(2). Amendment is generally a matter of right rather than of grace. *In re Kostin Estate*, 278 Mich App 47, 51; 748 NW2d 583 (2008). Leave to amend should be denied only for "particularized reasons," such as undue delay, bad faith or dilatory motive, repeated failures to cure by amendments previously allowed, undue prejudice to the opposing party, or futility. *Id.*; *Ostroth v Warren Regency, GP, LLC*, 263 Mich App 1, 5; 687 NW2d 309 (2004).

---

[1] We reject plaintiff's argument that the trial court's decision regarding equitable estoppel should be reviewed for an abuse of discretion or clear error. We are required to follow published decisions from this Court, MCR 7.215(J)(1), and in previous decisions, this Court has applied the de novo standard to a trial court's decision regarding judicial estoppel, see *Spohn v Van Dyke Pub Sch*, 296 Mich App 470, 479; 822 NW2d 239 (2012); *Szyszlo*, 296 Mich App at 46.

[2] Plaintiff's argument regarding waiver is limited to the defenses of lack of standing and judicial estoppel. Nonetheless, defendants' argument that plaintiff's claims are barred by the statute of limitations is predicated on the fact that plaintiff lacked standing in December 2012, when the complaint was filed. Thus, if defendants waived the defense that plaintiff lacked standing when the complaint was filed, then defendants cannot succeed on their argument that plaintiff's claims are barred by the statute of limitations.

According to plaintiff, defendants wrongfully delayed in asserting the affirmative defenses. "Delay, alone, does not warrant denial of a motion to amend." *Weymers*, 454 Mich at 659. However, a trial court may deny a motion to amend if the delay was in bad faith or if the opposing party suffered actual prejudice. *Id.* " '[P]rejudice' exists if the amendment would prevent the opposing party from receiving a fair trial, if for example, the opposing party would not be able to properly contest the matter raised in the amendment because important witnesses have died or necessary evidence has been destroyed or lost." *Id.*

Plaintiff claims that defendants, early on in discovery, could have learned that she had filed for bankruptcy. Defendants were given plaintiff's social security number in discovery, and defendants only asked plaintiff if she had been involved in any other legal action as "a plaintiff or a defendant." The term "bad faith" is generally defined as "[d]ishonesty of belief, purpose, or motive." *Black's Law Dictionary* (10th ed). Defendants' failure to use plaintiff's social security number to discover that she had filed for bankruptcy and their failure to specifically inquire whether plaintiff had been a "debtor" in a bankruptcy case do not evidence a dishonest purpose or motive by defendants in attempting to ascertain whether plaintiff had previously filed for bankruptcy.

Plaintiff also claims that defendants should have known that she filed for bankruptcy in 2009. In an affidavit, plaintiff averred that she had informed Dr. Burhans about her bankruptcy because she had kept asking Dr. Burhans and other physicians at Westside for sample prescriptions because she did not have the money to pay for prescriptions. Dr. Burhans's reply to plaintiff's argument that the affirmative defenses were waived indicates that defendants' attorneys were not aware that plaintiff had filed for bankruptcy until plaintiff was deposed, and nothing in the record indicates that defendants' attorneys were aware of the bankruptcy case at any time before plaintiff's deposition. Additionally, there is no indication in the record that Dr. Burhans, even if he remembered that plaintiff had filed for bankruptcy in 2009, failed to tell this fact to his attorney because of a dishonest purpose or motive. Any delay by defendants in asserting the affirmative defenses of lack of standing and judicial estoppel was not done in bad faith. *Weymers*, 454 Mich at 659.

The only prejudice that plaintiff claims that she suffered from defendants' delay in asserting the affirmative defenses is that her attorney expended a significant number of hours on the case and that her deposition, which covered two days, took a toll on her health. This claimed prejudice is not sufficient to deny leave to amend. See *id.* Plaintiff sets forth no argument to conclude that amendment of the affirmative defenses would prevent her from receiving a fair trial. *Id.*

We conclude that the affirmative defenses were not waived. Although defendants did not adequately plead the affirmative defenses in their responsive pleadings, they moved for leave to amend. Because there was no "particularized reason[]" for denying leave to amend, the trial court, had it addressed the issue, would have abused its discretion in denying leave. *Weymers*, 454 Mich at 639; *In re Kostin Estate*, 278 Mich App at 51.

We thus turn to defendants' claims that summary disposition was warranted in their favor due to plaintiff's purported lack of standing or because she was judicially estopped from pursuing her claims. When a debtor files for bankruptcy, he or she must list all of his or her

assets on a schedule of assets and liabilities under 11 USC 521(a)(1)(b)(i). *Young v Independent Bank*, 294 Mich App 141, 143; 818 NW2d 406 (2011). A potential cause of action constitutes an asset that must be included in the schedule of assets and liabilities. *Spohn v Van Dyke Public Schools*, 296 Mich App 470, 481-482; 822 NW2d 239 (2012); *Young*, 294 Mich App at 144. When filing for bankruptcy, the debtor loses all rights to his or her property and this property becomes part of the bankruptcy estate. 11 USC 541(a); *Spohn*, 296 Mich App at 485. Because potential causes of action belong to the bankruptcy estate, the bankruptcy trustee, and not the debtor, becomes responsible for the claims. The debtor loses standing to pursue such claims and the right to pursue the causes of action passes to the trustee for the benefit of the estate. *Young*, 294 Mich App at 144. Absent permission of the bankruptcy court or the abandonment of the potential cause of action by the trustee, the debtor may not commence suit on a potential cause of action that existed before or during the life of the bankruptcy proceedings. *Young*, 294 Mich App at 144; *Kuriakuz v Community Nat'l Bank of Pontiac*, 107 Mich App 72, 75; 308 NW2d 658 (1981).

Defendants sought summary disposition on the ground that plaintiff lacked standing to file the instant action because plaintiff's causes of action were assets of the bankruptcy estate under the control of the trustee when the suit was filed in light of plaintiff's knowing and intentional failure to disclosure the potential causes of action in her assets schedule. The trial court denied the motion, opining that plaintiff's standing was "provisional" at the time she filed the lawsuit against defendants and that she and the trustee had a somewhat joint standing for purposes of prosecuting the action, to the extent that any potential damages in the lawsuit would exceed plaintiff's outstanding obligation to her creditors. Defendant challenges the rationale employed by the trial court, but even if that rationale was in error, the trial court nonetheless reached the right result in refusing to grant summary disposition to defendants based upon a lack of standing.

Immediately after defendants filed their initial motion seeking summary disposition based on a lack of standing, plaintiff successfully petitioned for the reopening of the bankruptcy estate and for the amending of the asset schedules to include as an asset the underlying causes of action against defendants. Eventually, the trustee abandoned the underlying claims. This abandonment restored to plaintiff her standing to pursue her claims. *Young*, 294 Mich App at 144. Defendants assert that the reversion of plaintiff's interest in the potential claims against them triggered by the trustee's abandonment of the claims does not "relate back" to the date the underlying suit was commenced against them. However, the relation-back doctrine applies to amended complaints. See, e.g., *Smith v Henry Ford Hosp*, 219 Mich App 555, 558; 557 NW2d 154 (1996)("The doctrine of relation back was invented by the courts to associate the amended matter with the original pleading so that it would not be barred by the statute of limitation"). Plaintiff is not seeking to amend her complaint. Thus, defendants' reliance on the relation-back doctrine and related authority is misplaced.

Instead, in the context of bankruptcy proceedings, "[t]he ordinary rule is that, when a trustee abandons property of the bankrupt, title reverts to the bankrupt, nunc pro tunc, so that he is treated as having owned it continuously." *Barletta v Tedeschi*, 121 BR 669, 673 (DC NY, 1990), quoting *Wallace v Lawrence Warehouse Co*, 338 F2d 392, 394 n 1 (CA 9, 1964); See also, *Maheras v Awan*, 9 NYS 3d 1; 127 AD 3d 426, 428 (2015); *In re Dewsnup*, 87 BR 676, 680-681 (Utah, 1988). The phrase "nunc pro tunc" is "applied to acts allowed to be done after

the time when they should be done, with a retroactive effect, *i.e.*, with the same effect as if regularly done." Black's Law Dictionary (5th ed), p 964. Several courts have applied the "ordinary rule" referenced above to cure an initial lack of standing by ruling that the reversion of title permits a plaintiff, who prematurely filed a complaint, to continue to maintain his or her action even though the plaintiff did not have standing to sue at the time he or she commenced suit, even where the statute of limitations has expired before the reversion occurred. *Maheras*, 127 AD 3d at 428; *Bartletta*, 121 BR at 674-675. This rule of reversion is a legal fiction invented by courts to aid the courts in achieving a just result. *Bartletta*, 121 BR at 674; *Wallace*, 338 F2d at 394 n 1. Consequently, the rule is not "to be blindly followed to a result that is unjust." *Wallace, supra.*

Here, plaintiff's initial failure to disclose her potential lawsuit did not place defendants in jeopardy; it placed her creditors in jeopardy. Moreover, the trial court was not insulted or thwarted by her failure to disclose in the federal bankruptcy court which has its own mechanisms to address such failures. Under such circumstances, an application of the reversion rule in this case does not produce an unjust result and the trial court reached the right result in refusing to grant summary disposition on the issue of standing, albeit for the wrong reason. We will not reverse a trial court's order when the right result was reached for the wrong reason. *Taylor v Laban*, 241 Mich App 449, 458; 616 NW2d 229 (2000).

We similarly find that the trial court properly denied summary disposition on judicial estoppel grounds. Judicial estoppel, sometimes described as "the doctrine against the assertion of inconsistent positions," is "widely viewed as a tool to be used by the courts in impeding those litigants who would otherwise play 'fast and loose' with the legal system." *Paschke v Retool, Indus*, 445 Mich 502, 509; 519 NW2d 441 (1994). If a plaintiff has filed for bankruptcy, the plaintiff will be judicially estopped from asserting a cause of action if (1) the plaintiff assumes a position that was contrary to the one the plaintiff asserted under oath in the bankruptcy proceedings, (2) the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition, and (3) the plaintiff's omission did not result from mistake or inadvertence. *Spohn*, 296 Mich App at 480-481; *White v Wyndham Vacation Ownership, Inc*, 617 F3d 472, 478 (CA 6, 2010). In determining whether the plaintiff's omission resulted from mistake or inadvertence, courts consider whether the plaintiff lacked knowledge of the factual basis of the undisclosed claim, whether the plaintiff had a motive for concealment, and whether the evidence indicates an absence of bad faith. *Spohn*, 296 Mich App at 481.

It is undisputed, and the trial court found, that plaintiff did not disclose any causes of action against defendants in the initial bankruptcy proceedings. When a debtor files for bankruptcy, the debtor shall file a schedule of assets and liabilities, *Id.*, citing 11 USC 521(a)(1)(B), and it is well established that the assets of a debtor include potential causes of action, *Spohn*, 296 Mich App at 481. However, unlike in *Spohn*, plaintiff in this case successfully moved to reopen her bankruptcy case and amend her petition to include the action

against defendants. Thus, plaintiff ultimately fulfilled her duty to disclose by amending her bankruptcy petition and the first element of judicial estoppel has not been met.[3]

The trial court also found that the second element of judicial estoppel, that the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a final disposition, had been established. See *In re Johnson*, 345 BR 816, 822 (Bankr WD Mich, 2006). The trial court found, however, that there was a question of material fact as to whether plaintiff's omission occurred due to bad faith, i.e., whether there was mistake or inadvertence.

Plaintiff averred that she did not tell the bankruptcy trustee about any causes of action against Dr. Burhans because she was afraid that Dr. Burhans and the other physicians at Westside, if they learned that she told the trustee about Dr. Burhans's conduct, would refuse to provide her with health care and pain medication. Plaintiff also testified that a few months after Dr. Burhans started to come over to her parents' house, which was in the summer of 2008, she told her mother that Dr. Burhans had control over her and that their relationship was inappropriate. The trial court noted that the issue of bad faith was a question of fact given "the information provided by Doctor Liepman." Dr. Liepman is plaintiff's treating psychiatrist and the information provided relates to plaintiff's alleged fragile mental state at the time of her bankruptcy proceedings and defendant doctor's role in creating and maintaining that mental state. Such testimony is relevant to the questions of plaintiff's motive for concealment and of whether plaintiff acted in bad faith. The granting of summary disposition is discouraged where motive and intent are at issue and where a determination of the issues of motive and intent depend on the credibility of deponents. *Vanguard Ins Co v Bolt*, 204 Mich App 271, 276; 514 NW2d 525 (1994). The trial court thus properly denied summary disposition on judicial estoppel grounds.

Affirmed. This matter is remanded to the trial court for further proceedings. We do not retain jurisdiction.

/s/ Douglas B. Shapiro
/s/ Joel P. Hoekstra
/s/ Deborah A. Servitto

---

[3] In addition, after plaintiff amended her petition, the bankruptcy court, which was the affected judicial body, did not impose any sanctions or modify its prior orders.