NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0564n.06
Filed: July 6, 2005

No. 04-5675

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

CRYSTAL A. LEWIS,                      )
                                       )
    Plaintiff-Appellant,               )
                                       )
v.                                     )    ON APPEAL FROM THE UNITED
                                       )    STATES DISTRICT COURT FOR THE
WEYERHAEUSER CO., d/b/a BARDCOR        )    WESTERN DISTRICT OF KENTUCKY
CORPORATION,                           )
                                       )
    Defendant-Appellee.                )


BEFORE: COLE and SUTTON, Circuit Judges; ZATKOFF, District Judge.[*]


ZATKOFF, District Judge. Plaintiff-Appellant Crystal Lewis (hereinafter "Lewis")

appeals the district court's grant of summary judgment to Defendant-Appellee Weyerhaeuser Co.,

d/b/a Bardcor Corporation (hereinafter "Weyerhaeuser"). Lewis filed her Complaint in the Western

District of Kentucky on October 1, 2002, alleging failure to promote and wrongful discharge on the

basis of sex, race, and maternity status, in violation of Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e, *et seq*. On April 21, 2004, the district court granted Weyerhaeuser's motion for

summary judgment. The district court determined that the doctrine of judicial estoppel precluded

Lewis from pursuing her discrimination action because she failed to list the action as an asset on a

---

[*] The Honorable Lawrence P. Zatkoff, United States District Judge for the Eastern
District of Michigan, sitting by designation.

Chapter 13 bankruptcy petition she filed shortly after Weyerhaeuser terminated her employment.

For the reasons set forth below, we AFFIRM the district court's ruling.

## II.  BACKGROUND

Lewis, an African-American female, began her employment with Weyerhaeuser in July 2000.  Weyerhaeuser hired Lewis to work as a "stacker/counter" in the production department of Weyerhaeuser's Guthrie, Kentucky, cardboard manufacturing plant.[1]  In April 2001, Lewis requested maternity leave.

Weyerhaeuser granted Lewis's request for 12 weeks of maternity leave, which began on May 15, 2001, and was scheduled to end on August 7, 2001.  Lewis, however, did not return to work on August 7, 2001, and Weyerhaeuser alleges that she failed to contact anyone at the Guthrie plant to provide a return date. On October 3, 2001, Ronnie Face, the Guthrie plant's Production Manager, sent a letter to Lewis terminating her employment:

> Since we have not heard from you since mid-August, we are forced to make the assumption that you have resigned.  Under the FMLA provisions, we are not obligated to hold a position for you beyond the 12 week time period.
>
> Therefore, this letter is to inform you of your termination with

---

[1] Weyerhaeuser operated the plant under the trade name "Bardcor Corp.," which Lewis initially named as the Defendant.  Lewis filed an Amended Complaint naming Weyerhaeuser on July 29, 2003.

Weyerhaeuser Company.

J.A. at 75.

On December 26, 2001, two months after her termination, Lewis and her husband filed a joint voluntary Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Western District of Kentucky. Two sections of the petition are relevant for purposes of this appeal. First, the "Statement of Financial Affairs" section of the petition required Lewis and her husband to list "the gross amount of income the debtor has received from employment . . . from the beginning of this calendar year to the date this case was commenced." J.A. at 86. It is undisputed that Lewis did not list the wages she received from Weyerhaeuser during 2001, but she did list the wages she received from another employer called Manpower, Inc. Second, the "Schedule B - Personal Property" section of the petition required Lewis and her husband to list "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims." J.A. at 92. It is undisputed that Lewis did not list her discrimination claim against Weyerhaeuser. It is also undisputed that Lewis never amended her bankruptcy schedules to accurately reflect either her prior income or the existence of her discrimination claim. On February 26, 2002, the bankruptcy court confirmed Lewis's Chapter 13 bankruptcy plan, which required Lewis and her husband to repay 32 percent of their outstanding indebtedness.

On March 29, 2002, approximately one month after the bankruptcy court confirmed Lewis's bankruptcy plan, Lewis's attorney sent a letter to the Equal Employment Opportunity Commission,

(hereinafter "EEOC"), alleging that Weyerhaeuser discriminated against Lewis on the basis of "her sex, race, and pregnancy status" by awarding new jobs at the Guthrie plant to males with less seniority than her while she was away on pregnancy leave. J.A. at 81. On July 18, 2002, Lewis filed a formal charge of discrimination with the EEOC, again alleging discrimination on the basis of sex, race, and pregnancy status. On September 12, 2002, the EEOC dismissed the complaint and issued a right-to-sue letter. Lewis filed the present action alleging Title VII violations on October 10, 2002.

On February 2, 2004, Weyerhaeuser moved for summary judgment on the basis of judicial estoppel. Weyerhaeuser argued that under prevailing case law in the Sixth Circuit, as well as the Eleventh Circuit, judicial estoppel precluded Lewis from pursuing her discrimination claim because she had knowledge of the claim and a motive to conceal it when she filed her bankruptcy petition. In response, Lewis provided an affidavit alleging that she relied on her bankruptcy counsel's paralegal, who advised her not to mention her potential discrimination lawsuit or the wages she earned at Weyerhaeuser:

> At the time that my bankruptcy petition was prepared, I specifically spoke with Kim Vaught who was, at that time, a paralegal with the firm of Kemp Ison Harton Tilley & Holland. I specifically asked Kim if I should list the Defendant as an employer or whether I should list my claim against them for wrongful termination as an asset of my bankruptcy estate. I was specifically advised by Kim Vaught not to do so and that is the reason the Defendant is not mentioned in my bankruptcy petition.

J.A. at 207-8 (Lewis Aff. ¶ 3). Lewis also alleged in her affidavit that she notified the Chapter 13

4

No. 04-5675
*Lewis v. Weyerhaeuser, Co.*

Trustee's office of her potential discrimination claim:

> Sometime after the start of my bankruptcy plan, I contacted a lady by the name of Phyllis who works . . . for the Chapter 13 bankruptcy trustee to whom I make my Chapter 13 plan payments. I have not withheld from them the existence of this lawsuit. I specifically discussed with Phyllis what I should do with any proceeds of this lawsuit in the event that I am successful. Phyllis explained that some of the proceeds of the lawsuit would have to be paid into the bankruptcy plan. That is exactly what I intend to do.

J.A. at 208 (Lewis Aff. ¶ 4). Lewis averred that she relied in good faith on the advice of her bankruptcy attorney and his staff, and "never intended to mislead anyone in any way." J.A. at 208 (Lewis Aff. ¶ 5).

On April 21, 2004, the district court granted Weyerhaeuser's motion for summary judgment. The district court found that Lewis intentionally omitted from her bankruptcy schedules both her prior employment with Weyerhaeuser and her discrimination claim. The district court rejected Lewis's argument that her omission was a good-faith mistake, finding that the "only 'mistake' was in relying on bad legal advice . . . ." J.A. at 23 (D. Ct. Op. at 3). Lewis appeals that judgment, arguing once again that judicial estoppel should not bar her claim because she relied on the advice of her bankruptcy counsel and informed the Trustee's staff of the potential discrimination claim.

## III. LEGAL STANDARD

5

This court reviews *de novo* a district court's grant of summary judgment. *See Smith v. Henderson*, 376 F.3d 529, 533 (6th Cir. 2004). Summary judgment is appropriate only if the answers to interrogatories, depositions, admissions, and pleadings combined with the affidavits in support show that no genuine issue as to any material fact remains and the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324. The non-moving party must do more than show that there is some abstract doubt as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v.*

*Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).

Additionally, this court reviews *de novo* a district court's application of judicial estoppel. *See Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002); *Eubanks v. CBSK Financial Group, Inc.*, 385 F.3d 894, 897 (6th Cir. 2004). We note, however, that the Supreme Court has recently described judicial estoppel as "an equitable doctrine invoked by the court at its discretion." *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). In the Sixth Circuit, "[g]enerally matters that are committed to the sound discretion of the district court are reviewed by the court of appeals for abuse of discretion." *Workman v. Frito-Lay, Inc.*, 165 F.3d 460, 465 (6th Cir. 1999). Indeed, a majority of federal courts that have addressed the issue apply the abuse of discretion standard to a district court's application of judicial estoppel. *See Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 30-31 (1st Cir. 2004); *Klein v. Stahl GMBH & Co. Maschinefabrik*, 185 F.3d 98, 108 (3d Cir. 1999); *King v. Herbert J. Thomas Mem. Hosp.*, 159 F.3d 192, 196 (4th Cir. 1998); *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999); *Broussard v. Univ. of California*, 192 F.3d 1252, 1255 (9th Cir. 1999); *Barger v. City of Cartersville, GA*, 348 F.3d 1289, 1293 (11th Cir. 2003); *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1565 (Fed. Cir. 1996); *but see United States v. Hook*, 195 F.3d 299, 305 (7th Cir. 1999) (applying *de novo* standard of review). In light of *New Hampshire* and the extensive contrary authority, we question the continued use of the *de novo* standard in the context of judicial estoppel. Nevertheless, because we find that the district court's ruling was proper under either standard, we need not resolve this issue here. *See Leonard v. Southwestern Bell Corp. Disability Income Plan*, 341 F.3d 696, 700 (8th Cir. 2003) (declining to adopt an abuse of discretion

standard for review of judicial estoppel rulings based on *New Hampshire* because the district court

would be affirmed under the *de novo* standard).

## IV. ANALYSIS

Section 521(1) of the Bankruptcy Code requires a debtor to file "a schedule of assets and

liabilities, a schedule of current income and current expenditures, and a statement of the debtor's

financial affairs." 11 U.S.C. § 521(1). It is well-settled that a cause of action is an asset that must

be scheduled under § 521(1). *See Eubanks v. CBSK Financial Group, Inc.*, 385 F.3d 894, 897 (6th

Cir. 2004); *Cusano v. Klein*, 264 F.3d 936, 945 (9th Cir. 2001). Moreover, "[t]he duty of disclosure

is a continuing one, and a debtor is required to disclose all potential causes of action." *In re Coastal

Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999) (quoting *Youngblood Group v. Lufkin Fed. Savings

& Loan Ass'n*, 932 F. Supp. 859, 867 (E.D. Tex. 1996)). "[T]he disclosure obligations of consumer

debtors are at the very core of the bankruptcy process and meeting these obligations is part of the

price debtors pay for receiving the bankruptcy discharge." *In re Colvin*, 288 B.R. 477, 481 (Bankr.

E.D. Mich. 2003); *In re Coastal Plains, Inc.*, 179 F.3d at 208 (citing *Oneida Motor Freight, Inc. v.

United Jersey Bank*, 848 F.2d 414 (3d Cir. 1988)) ("Viewed against the backdrop of the bankruptcy

system and the ends it seeks to achieve, the importance of this disclosure duty cannot be

overemphasized.").

The doctrine of judicial estoppel "generally prevents a party from prevailing in one phase

8

of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire*, 532 U.S. at 749 (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)). Judicial estoppel "preserve[s] the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship." *Browning v. Levy*, 283 F.3d 761, 776 (6th Cir. 2003) (quotation omitted). This court has previously described judicial estoppel as a rule against "playing fast and loose with the courts," "blowing hot and cold as the occasion demands," or "hav[ing] [one's] cake and eat[ing] it too." *Reynolds v. Comm'r*, 861 F.2d 469, 472 (6th Cir. 1988) (citations omitted) (alteration in original).

The Supreme Court has noted that "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation or principle." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001). Nevertheless, despite the "amorphous nature of judicial estoppel," *Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 30-31 (1st Cir. 2004), the Supreme Court identified three considerations that are typically relevant in determining whether judicial estoppel should apply: (1) "a party's later position must be clearly inconsistent with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceedings would create the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 750-51 (internal quotes and citations omitted). These factors, however, are not "inflexible prerequisites or an exhaustive formula for

9

determining the applicability of judicial estoppel." *Id.* at 751. In *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002), this court, focusing on the first two factors identified in *New Hampshire*, described judicial estoppel as barring a party from "(1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition." *Browning*, 283 F.3d at 775 (internal quotation omitted).

Both of the factors set forth in *Browning* are present in this appeal. First, Lewis's pursuit of her current discrimination action is without question "contrary to" her sworn bankruptcy petition. *Id.* Lewis's bankruptcy petition, which she signed under penalty of perjury, indicates that Lewis had no contingent and unliquidated claims; yet approximately one month after her Chapter 13 plan was confirmed she complained of Weyerhaeuser's conduct to the EEOC. This court has previously found that pursuing a cause of action that was not disclosed as an asset in a previous bankruptcy filing creates an inconsistency sufficient to support judicial estoppel. *See Eubanks*, 385 F.3d at 898; *Browning*, 283 F.3d at 775. Second, it is also clear that in confirming Lewis's Chapter 13 plan, the bankruptcy court adopted Lewis's statement that she had no potential causes of action. *See Reynolds*, 861 F.2d at 473 ("[W]hen a bankruptcy court - which must protect the interests of all creditors - approves a payment from the bankruptcy estate on the basis of a party's assertion of a given position, that, in our view, is sufficient 'judicial acceptance' to estop the party from later advancing an inconsistent position."); *De Leon v. Comcar Indust.*, 321 F.3d 1289, 1291 (11th Cir. 2003) (applying judicial estoppel as a result of omissions in a Chapter 13 bankruptcy petition).

Nevertheless, Lewis maintains that judicial estoppel should not apply because her omissions resulted from a good-faith mistake; specifically, her reliance on her bankruptcy counsel's advice.

It is well-settled that judicial estoppel does not apply where the prior inconsistent position occurred because of "mistake or inadvertence." *Browning,* 283 F.3d at 776; *See also New Hampshire*, 532 U.S. at 753 ("We do not question that it may be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake.") (internal quotation omitted). To determine whether the debtor's omission might be deemed inadvertent, the *Browning* court adopted the approach taken by the Fifth Circuit Court of Appeals in *In re Coastal Plains, Inc.*, 179 F.3d 197 (5th Cir. 1999). Under that approach, the failure to disclose a cause of action may be deemed inadvertent where (1) "the debtor lacks the knowledge of the factual basis of the undisclosed claims," or (2) "the debtor has no motive for concealment." *Browning*, 283 F.3d at 776 (citing *In re Coastal Plains, Inc.*, 179 F.3d at 210).

Weyerhaeuser argues that under *Browning* judicial estoppel *must* apply if Lewis knew of the factual basis for her discrimination action and had a motive to conceal it. In other words, Weyerhaeuser maintains that unless Lewis can demonstrate that her omission was inadvertent under the factors set forth in *Browning* and *In re Coastal Plains*, judicial estoppel must apply. Lewis's affidavit clearly establishes that she knew of her potential discrimination claim and, furthermore, as the district court noted, Lewis had a motive to conceal her claim since "It is always in a Chapter 13 petitioner's interest to minimize income and assets." J.A. at 25 (D. Ct. Op. at 4 (citing *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1288 (11th Cir. 2002)). Thus, if Weyerhaeuser's

11

interpretation of Sixth Circuit precedent is correct, judicial estoppel would prevent Lewis from pursuing her discrimination claim regardless of her intent or her efforts to place those involved in her bankruptcy on notice of her potential claim. Although we ultimately conclude that judicial estoppel bars Lewis from pursuing her claim, we find that Weyerhaeuser's interpretation of judicial estoppel is too narrow.

Two days after the district court granted Weyerhaeuser summary judgment, the Sixth Circuit decided *Eubanks v. CBSK Fin. Group, Inc.*, 385 F.3d 894 (6th Cir. 2004). In *Eubanks*, the court reversed the district court's decision to apply judicial estoppel despite the plaintiffs' knowledge of a potential lender liability claim that they had omitted from a previous Chapter 7 bankruptcy petition. The court noted that it "considers reasons of mistake and inadvertence, *as well as an absence of bad faith*, in determining judicial estoppel . . . ." *Eubanks*, 385 F.3d at 895 (emphasis added). Although the plaintiffs in *Eubanks* omitted their cause of action from the bankruptcy schedules, they (1) notified the bankruptcy trustee of the claim during a meeting and the trustee requested all of the documents regarding the claim; (2) asked the trustee on several occasions over several months whether he intended to pursue the claim on behalf of the estate; (3) moved the bankruptcy court for a status conference on the issue of the lender liability claim; (4) unsuccessfully moved to allow the trustee to be substituted for plaintiffs in the lender liability action after the action was filed and after the trustee refused to abandon the claim in the bankruptcy proceeding; and (5) filed an amendment to their original bankruptcy petition to add the lender liability action to their bankruptcy schedules after the defendant filed a motion to dismiss on the basis of judicial estoppel.

12

*See id.* at 895-97. The court held that although the plaintiffs had knowledge of the potential lender liability claim during the pendency of the bankruptcy proceeding, the above actions by the plaintiffs demonstrated that their omission was in good faith and in all likelihood inadvertent given the plaintiffs' "constant affirmative" efforts to inform the trustee and the bankruptcy court of the claim "through correspondence, motions, and status conference requests . . . ." *Id.* at 899 & n.3. Thus, under *Eubanks*, even if the debtor has knowledge of a potential cause of action and a motive to conceal it, if the plaintiff does not actually conceal it and instead takes affirmative steps to fully inform the trustee and the bankruptcy court of the action, it is highly unlikely that the omission in the bankruptcy petition was intentional. In such a case, the equitable principles governing judicial estoppel do not support its application. Accordingly, Weyerhaeuser's argument that judicial estoppel must apply where a debtor cannot establish "mistake or inadvertence" under *Browning* is unpersuasive.

Nevertheless, Lewis's actions in the present case pale in comparison to the actions taken by the plaintiffs in *Eubanks*. As the district court noted, none of Lewis's evidence "suggests that either her receipt of income from Weyerhaeuser or her claim against Weyerhaeuser were revealed to the bankruptcy court or to the trustee before approval of the bankruptcy plan." J.A. at 23 (D. Ct. Op. at 3). Lewis never sought to amend her bankruptcy schedules, nor did she file a motion or make any other sort of attempt to inform the bankruptcy court of her discrimination action. Lewis's failure to notify the bankruptcy court of her potential discrimination claim is notable because judicial estoppel is intended to protect the integrity of the courts. *See In re Coastal Plains*, 179 F.3d at 210

13

("Again, the purpose of *judicial estoppel* is *not* to protect the litigants; it is to protect the integrity of the judicial system."). In addition, her only relevant contact with the trustee was a conversation with a woman named "Phyllis" whom Lewis alleges worked for the Trustee. Lewis's description of that conversation, however, does not indicate that the conversation took place before Weyerhaeuser raised the issue of judicial estoppel; she alleges only that it occurred "sometime after the start of [her] bankruptcy plan . . . ." Furthermore, Lewis's affidavit does not establish that Phyllis was aware that the cause of action had been omitted from the bankruptcy petition. Therefore, we find that the minimal alleged effort Lewis put forth to inform the Trustee's staff of her potential discrimination claim does not establish that her omissions were inadvertent under *Eubanks*.

We also find unpersuasive Lewis's assertion that she relied in good faith on the advice of her attorney's paralegal. In a similar case, the Eleventh Circuit noted that although the "[debtor's] attorney failed to list [the debtor's] discrimination suit on the schedule of assets despite the fact that [the debtor] specifically told him about the suit, the attorney's omission is no panacea." *Barger v. City of Cartersville, Georgia*, 348 F.3d 1289, 1295 (11th Cir. 2003). The *Barger* court relied upon *Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962) for the general proposition that a litigant is bound by the errors of his or her attorney. *See Link*, 370 U.S. at 633-34 ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent."). We find the *Barger* court's extension of *Link* to the doctrine of judicial estoppel appropriate in this particular case.

14

The issue here is whether Lewis pursued a "position" before the bankruptcy court that is inconsistent with the pursuit of her current discrimination claim against Weyerhaeuser. Lewis alleges that before filing her bankruptcy petition, she informed a paralegal with her law firm that she had a potential discrimination claim against Weyerhaeuser. For whatever reason, the paralegal or Lewis's attorney made a conscious decision not to present that information to the bankruptcy court in contravention of the clear terms of the bankruptcy petition. Thus, Lewis's "freely selected agent" took the position that Lewis had no cause of action against Weyerhaeuser. *Link*, 370 U.S. at 633-34. Lewis presents no compelling reason to justify departing from the general rule set forth in *Link* that litigants are bound by the actions of their attorneys.[2]

We note, however, that another panel of this court recently affirmed a district court's decision not to apply judicial estoppel at least in part because the party asserting the inconsistent position relied on the advice of counsel in the prior court proceeding. *See Pennycuff v. Fentress County Bd. of Educ.*, 404 F.3d 447, 453 (6th Cir. 2005). In *Pennycuff*, the court held that a defendant school board's admission in a prior court proceeding that the plaintiff employee had

---

[2] In *Link*, the Supreme Court addressed a lawyer's failure to prosecute, which clients may have little knowledge of or control over. This court has noted its reluctance to follow *Link* where the failure to prosecute is the fault of the attorney. *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1094-95 (6th Cir. 1994) ("Despite the Supreme Court's unequivocal language, this court, like many others, has been extremely reluctant to uphold the dismissal of a case merely to discipline an attorney . . . . [D]ismissal is usually inappropriate where the neglect is solely the fault of the attorney."). We have no difficulty applying *Link* to the present case, however, because Lewis's affidavit establishes that she was aware of the terms of the bankruptcy petition requiring her to disclose under the penalty of perjury her prior employment and any potential claims. Thus, the actions of Lewis's attorney and/or paralegal were taken with Lewis's knowledge and consent.

attained tenure did not prevent the school board from asserting that the employee did not have tenure in a later proceeding because, among other things, "the defendants relied on the advice of counsel . . . ." *Pennycuff*, 404 F.3d at 453. In *Pennycuff*, however, the school board's admission occurred in a proceeding in which the employee's tenure was not at issue. *Pennycuff*, 404 F.3d at 453. The court determined that "[b]ecause the Board's prior admission that Pennycuff was a tenured teacher was made on the advice of counsel in a proceeding in which Pennycuff's tenure was not at issue," the Board had not engaged in "intentional self-contradiction . . . as a means of obtaining unfair advantage." *Id*. (quoting *New Hampshire,* 532 U.S. at 751).

In contrast, the extent of Lewis's assets and her earnings were highly relevant in her Chapter 13 bankruptcy proceeding. *See In re Coastal Plains, Inc.*, 179 F.3d at 208 (noting that the "integrity of the bankruptcy system depends on a full and honest disclosure by debtors of all their assets.") (emphasis removed). Furthermore, the facts in this case, unlike those in *Pennycuff*, support a finding that Lewis acted intentionally and in bad faith. First, Lewis began the process of filing her discrimination claim with the EEOC only one month after the bankruptcy plan was approved, which tends to show that she waited until the plan was approved before pursuing her discrimination action. Second, she also omitted altogether her prior employment with Weyerhaeuser. While a non-attorney may not know the exact nature of "[o]ther contingent and unliquidated claims of every nature" (J.A. at 92), it is hard to believe that Lewis did not understand the language in the bankruptcy petition requiring her to disclose "the gross amount of income the debtor has received from employment . . . from the beginning of this calendar year to the date this case was commenced." J.A. 86. Indeed,

during oral argument Lewis's counsel conceded that Lewis listed her wages from another prior employer called Manpower, Inc. Accordingly, although judicial estoppel may not always apply to positions taken on the advice of an attorney, Lewis's failure to list Weyerhaeuser as an employer on her bankruptcy schedules despite the clear requirement that she do so under penalty of perjury, the heightened importance of full asset disclosure to the bankruptcy court, and the questionable timing of events in this case support the district court's decision to apply judicial estoppel.

## V. CONCLUSION

For these reasons, we **AFFIRM** the judgment of the district court.