NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 17a0588n.06

Case No. 17-5221

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| WILLIAM GRISE, et al. | ) | **FILED** |
|  | ) | Oct 26, 2017 |
| Plaintiffs-Appellants, | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
|  | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE EASTERN |
| RONALD ALLEN, et al. | ) | DISTRICT OF KENTUCKY |
|  | ) |  |
| Defendants-Appellees. | ) |  |

**O P I N I O N**

BEFORE: KEITH, ROGERS, and McKEAGUE, Circuit Judges.

**McKEAGUE, Circuit Judge.** On a January evening in rural Madison County, Kentucky, Dr. William Grise could no longer bear the barking of a neighbor's dog. To quiet the dog, Dr. Grise twice fired his shotgun into the ground of his property. The barking stopped—but Dr. Grise's troubles were only just beginning. Madison County Sheriff's Deputy Ronald Allen soon arrived at the Grise property and eventually arrested Dr. Grise and entered his home. Dr. Grise and his wife, Mary Grise, filed suit, alleging that the arrest and home entry violated their federal constitutional and Kentucky state law rights.[1] On two separate motions for summary

---

[1]    While this appeal was pending, Mrs. Grise passed away. We granted Dr. Grise's motion to substitute parties, and he, as her estate's executor, now stands in his late wife's shoes.

judgment, the district court disposed of the Grises' claims. Finding the Grises' arguments unresponsive to the district court's analysis and otherwise unpersuasive, we **AFFIRM**.

**I**

In considering defendants' motions for summary judgment, the district court was required to draw all factual inferences "in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Accordingly, though some important factual disputes are highlighted, the picture painted here is largely that provided by the Plaintiff-Appellant Grises.

*Factual Background.* On January 2, 2011, Ronald T. Allen, a Madison County Sheriff's Deputy, responded to a 911 call reporting gun shots near the property of Dr. William Grise. As Deputy Allen approached Dr. Grise's home in rural Madison County, Dr. Grise—seeing the vehicle but unable to identify it—warned his wife, Mary Grise, that "this might be trouble," put a pistol in his jacket pocket, and stepped out onto his front walkway. When Deputy Allen arrived, he asked Dr. Grise to identify himself, and Dr. Grise did so. Dr. Grise explained that he had fired his shotgun into the ground in an attempt to silence a neighbor's barking dog, denied that he had broken any law, and turned to walk back inside his home.

As Dr. Grise walked back toward his house, Deputy Allen repeatedly questioned Dr. Grise about the dangers of firing a shotgun, and Dr. Grise four times answered that "no law was broken." Deputy Allen then asked Dr. Grise if he could enter the house, and Dr. Grise refused. Deputy Allen ordered Dr. Grise to "go in the house," and Deputy Allen followed Dr. Grise onto his porch. As Dr. Grise walked through his front door, Mrs. Grise—who had been standing behind the partly closed door—fell to the ground. The Grises claim that Mrs. Grise, stricken with partial paralysis from a stroke, simply lost her balance as she attempted to move away from

the opening door. Deputy Allen disputes this version of events, stating that he "saw [Dr. Grise] push his wife down in the doorway."

Deputy Allen then demanded that Dr. Grise open the door, grabbed Dr. Grise by the arm while he was still in his house, and pulled him outside where he soon arrested him. At some point after seeing Mrs. Grise lying on the floor, Deputy Allen called for emergency medical services. As EMS personnel attended to Mrs. Grise, Deputy Allen walked through the Grises' living room, dining room, and kitchen. Deputy Allen discovered two legally possessed guns in the living room and a half-empty bottle of wine in the kitchen; Mrs. Grise did not suffer any injuries from her fall.

Dr. Grise was charged with public intoxication, fourth-degree assault, and carrying a concealed weapon. At his preliminary hearing before the Madison County District Court on March 14, 2011, Garrett T. Fowles, a county attorney, offered to dismiss the charges against Dr. Grise if Dr. Grise would abide by certain conditions for one year. The conditions were three-fold: first, that Dr. Grise would not possess a firearm other than his shotgun; second, that Dr. Grise would not discharge any weapon except in self-defense; and third, that Dr. Grise would commit no further criminal violations. Mr. Fowles at first indicated those three conditions were the entirety of the agreement: "And with those three conditions in mind, if you do those things and abide by those conditions for a period of a year, when we get this case back I'll get the Commonwealth to recommend that the charges be dismissed." The presiding judge then reiterated the three conditions, ordered a continuance until March 12, 2012, and instructed Mr. Grise to keep in touch with his attorney in the meantime. But then Mr. Fowles interjected:

MR: FOWLES: Tom, this—oh, I'm sorry, Judge.

COURT: Yes.

MR. FOWLES: I forgot about one other condition. Dr. Grise will stipulate to probable cause for the arrest without question.

COURT: Show stip PC, continue to March 12, 2012, 9:00 a.m., to be dismissed if no further violations, no possession of firearms with the exception of the shotgun, and not to discharge a weapon on his property unless in self-defense.

DR. GRISE: Yes sir.

COURT: Okay. Thank you. That takes care of the matter.

Some three months later, on June 6, 2011, Dr. and Mrs. Grise filed this lawsuit, naming Deputy Allen and Sheriff Nelson O'Donnell, in their individual and official capacities, and the Madison County Sheriff's Department, as defendants. The Grises asserted 11 claims in total: false arrest under § 1983 and Kentucky law; malicious prosecution under § 1983 and Kentucky law; abuse of criminal process under § 1983 and Kentucky law; unlawful search and invasion of privacy under § 1983 and Kentucky law; failure to train and supervise under § 1983; and negligent hiring and retention and outrage under Kentucky law. Defendants filed their first motion for summary judgment on February 7, 2012, arguing that Dr. Grise stipulated to probable cause and that such stipulation defeated essential elements of most of his claims. In response, Dr. Grise denied ever having stipulated to probable cause.

The following month, on March 12, 2012, Dr. Grise returned to the Madison District Court on the criminal charges still pending against him. Dr. Grise explained to the court that he never intended to stipulate, and would not stipulate, to probable cause. Hearing this, county attorney Mr. Fowles said that Dr. Grise's testimony "pretty much queers the deal." The following colloquy then occurred:

JUDGE HARDIN: That['s] what I said. It was to be dismissed, that was the recommendation if there was a stipulation. If the[y] are saying there is no

stipulation—I do not know what the status—I am sure you are not moving to dismiss it.

MR. FOWLES: I am not; the status is that we will prosecute.

JUDGE HARDIN: So how do you want to set it for a pretrial.

BURL McCOY (Dr. Grise's attorney): That would be the easiest thing to do, is set it down for a pretrial.

MR. FOWLES: Whatever suits you is fine by me.

JUDGE HARDIN: So we will set it . . . April 23 at 2:30 in the afternoon.  If you can't resolve it by then, we will get a jury trial.

But at the pretrial conference, the Commonwealth reversed its position, refusing to withdraw its recommendation of dismissal and arguing that Dr. Grise's stipulation on March 14, 2011, was binding and irrevocable.  A hearing was held on July 17, 2012, to determine whether Dr. Grise had stipulated to probable cause. The district court in the civil case agreed to stay proceedings pending resolution of the probable cause stipulation.  The Madison District Court determined that Dr. Grise had in fact stipulated to probable cause.  After the same court entered a final order dismissing the criminal case against Dr. Grise, he unsuccessfully challenged his stipulation in the Madison County Circuit Court.  The Kentucky Court of Appeals and Supreme Court of Kentucky both declined discretionary review.

*Procedural Background.*  The probable cause stipulation issue resolved, Defendants filed their Renewed Motion for Summary Judgment, seeking dismissal of all claims, on August 14, 2015.  On March 30, 2016, the court granted Defendant's motion as to all claims asserted by Dr. Grise, relying almost exclusively on Dr. Grise's probable cause stipulation.  With respect to Dr. Grise's false arrest, malicious prosecution, abuse of process, illegal search, and outrage claims (Counts One through Eight and Eleven), the district court reasoned: (1) that Dr. Grise was collaterally estopped from re-litigating *whether* he stipulated to probable cause; (2) that such

stipulation in the criminal matter judicially estopped him from changing his position in the civil case; and (3) that because an absence of probable cause was an essential element of each of those claims, he could not establish a prima facie case for any of them. And because Dr. Grise was unable to establish an underlying constitutional violation, the district court dismissed the same claims against Deputy Allen and Sheriff O'Donnell in their official capacities and against Madison County. The want of a constitutional violation was also fatal to Counts Nine and Ten of Dr. Grise's complaint, against Sheriff O'Donnell and Madison County, for failure to train and supervise under § 1983 and negligent hiring and retention under Kentucky law.

As for claims by Mrs. Grise, the district court knocked out Counts One through Six for lack of standing "because there is no allegation that the Defendants violated Mrs. Grise's rights." Counts Eight and Eleven, for illegal search and outrage under Kentucky law, failed because Kentucky law did not provide for either cause of action. That left Mrs. Grise with her Fourth Amendment illegal search claim under § 1983, which the district court initially said should survive summary judgment, as her husband's stipulation to probable cause did not apply to her. Mrs. Grise's claims for failure to train and supervise and negligent hiring and retention also survived, as she could still establish the necessary underlying constitutional violation.

Undeterred, Defendants attacked Mrs. Grise's three remaining claims in their Second Renewed Motion for Summary Judgment on July 15, 2016. The district court granted Defendants' motion on February 2, 2017. The district court held that Deputy Allen was authorized to re-enter the Grise home after arresting Dr. Grise under the emergency aid exception to the warrant requirement. In addition, the district court held that Deputy Allen's further foray into the living room, dining room, and kitchen was justified as a protective sweep. This appeal followed.

## II

### A.     Standard of Review

"Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." *Mazur v. Young*, 507 F.3d 1013, 1016 (6th Cir. 2007); Fed. R. Civ. P. 56.  We review the district court's decision granting summary judgment de novo, drawing all permissible inferences in favor of the Grises.  *See Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014).  The de novo standard of review applies also to the district court's invocation of judicial estoppel, even though it is an equitable doctrine employed at the district court's discretion.  *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002).[2]

### B.     Analysis

#### 1.     Dr. Grise's Claims

In granting Defendants' motion for summary judgment, the district court relied heavily on the judicial estoppel doctrine.  The court held that, given Dr. Grise's stipulation to probable cause in his criminal case, he could not now reverse his position and allege a lack of probable cause.  That proved fatal to all eleven of Dr. Grise's claims.[3]  First, because establishing a lack of

---

[2]     In another case, a panel of this court "question[ed] the continued use of the de novo standard in the context of judicial estoppel" in light of the fact that matters committed to the district court's discretion are generally reviewed under an abuse of discretion standard. *Lewis v. Weyerhauser Co.*, 141 F. App'x 420, 423–24 (6th Cir. 2005).  *Lewis* also noted that "a majority of federal courts that have addressed the issue apply the abuse of discretion standard" to judicial estoppel.  *Id.*  Nevertheless, this court, sitting en banc, recently declined to apply abuse of discretion review to a district court's judicial estoppel determination in *In re Ohio Execution Protocol*, 860 F.3d 881, 891 (6th Cir. 2017)—and we decline to do so today.  That departure is best ordered by an en banc court.

[3]     The district court provided alternative grounds for summary judgment on a few such claims.

probable cause was an essential element of Dr. Grise's false arrest, malicious prosecution, illegal search, abuse of process, and outrage claims, the district court concluded that Dr. Grise could not succeed on those claims. And second, because at least one of those underlying violations had to be shown to serve as a predicate for Dr. Grise's failure to train and negligent hiring and retention claims, the district court disposed of those, too. The district court was correct at both turns.

The district court appropriately invoked judicial estoppel against Dr. Grise. An equitable doctrine, judicial estoppel holds that, "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." *Watkins v. Bailey*, 484 F. App'x 18, 20 (6th Cir. 2012) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). The Supreme Court has provided three factors to assess whether judicial estoppel should be applied in a particular case: (1) whether the party's current position is "clearly inconsistent" with its previous one; (2) whether the earlier court actually accepted the party's position; and (3) whether the party against whom judicial estoppel is invoked would "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire*, 532 U.S. at 750–51.

These factors counsel in favor of applying the doctrine in this case. First, it is plainly inconsistent to stipulate to the existence of probable cause in one case and then allege its absence in a later case. Second, even if the Madison County court did not expressly adopt Dr. Grise's stipulation, it did enter its order of dismissal on that condition. *Cf. Mirando v. U.S. Dep't of Treasury*, 766 F.3d 540, 547 (6th Cir. 2014) (suggesting that admission in guilty plea might satisfy judicial acceptance factor of estoppel test). And third, if Dr. Grise only secured dismissal of the charges against him by stipulating that probable cause *existed*, he would "derive an unfair

advantage" if he were permitted to reverse his position in his civil suit and potentially obtain damages by showing a *lack* of probable cause. *See New Hampshire*, 532 U.S. at 751.

The district court was justified in preventing Dr. Grise from changing positions, and that prevents Dr. Grise from establishing an essential element of his false arrest, malicious prosecution, illegal search, abuse of process, and outrage claims. That is true with respect to Dr. Grise's federal law claims. *See Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) ("In order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause."); *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007) ("What is certain, however, is that [a malicious prosecution claim] fails when there was probable cause to prosecute . . . ."); *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 678 (6th Cir. 2005) ("The Fourth Amendment to the United States Constitution prohibits searches and seizures absent probable cause or a warrant based on probable cause."). And it is equally true with respect to Dr. Grise's state law claims. *See Myers v. City of Louisville*, 590 S.W.2d 348, 349 (Ky. Ct. App. 1979) (noting that false arrest claim requires showing absence of probable cause); *Broaddus v. Campbell*, 911 S.W.2d 281, 281 (Ky. Ct. App. 1995) (holding that probable cause stipulation negates malicious prosecution action); *Pennington v. Dollar Tree Stores, Inc.*, 104 F. Supp. 2d 710, 715 (E.D. Ky. 2000) (dismissing both abuse of process and outrage claims when plaintiff previously stipulated to probable cause).[4] Because Dr. Grise is unable to establish a material element of these claims due to his prior stipulation, the district court properly dismissed those claims on summary judgment.

---

[4]    *Pennington* resolves both the federal and state law abuse of process claims, since the elements of the federal claim would mirror those of the state law claim. *Voyticky*, 412 F.3d at 676–77. Furthermore, Dr. Grise's § 1983 abuse of process claim fails for an additional reason: the Sixth Circuit does not even recognize an abuse of process claim brought pursuant to § 1983. *Moore v. WesBanco*, 612 F. App'x 816, 823 (6th Cir. 2015) ("This court has consistently declined to recognize an abuse-of-process claim under 42 U.S.C. § 1983.").

The district court also correctly concluded that, without the showing of an underlying tort by Deputy Allen, the federal law failure to train and supervise and the state law negligent hiring and retention claims failed. As for the federal law issue, we have made clear that "a prerequisite of supervisory liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor." *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006). Because Dr. Grise cannot establish any unconstitutional conduct by Deputy Allen, neither Sheriff O'Donnell nor Madison County can be held liable on a § 1983 failure to train and supervise theory. So too for the state law claim. In Kentucky, "[t]here must be a finding of a tort to support liability and damages under a theory of negligent hiring/retention." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 730 (Ky. 2009). Without such a finding here, the district court correctly dismissed the state law negligent hiring and retention claims against Sheriff O'Donnell and Madison County.

Before turning to Mrs. Grise's claims, we must note that affirming the district court on judicial estoppel grounds was made easier by the fact that Dr. Grise hardly bothered to address the issue. Rather than responding to the district court's judicial estoppel analysis, Dr. Grise challenged only the district court's use of collateral estoppel. But the district court could not have been clearer that collateral estoppel only got it halfway to dismissing Dr. Grise's claims, and that it was judicial estoppel that proved dispositive. Collateral estoppel barred re-litigation of *whether* Dr. Grise stipulated to probable cause in his Madison County criminal case; judicial estoppel dictated what *effect* that earlier-in-time stipulation would have in his civil suit in federal district court. Lest there be any confusion, the district court was explicit: "Dr. Grise's false arrest, malicious prosecution, and illegal search claims fail based on the doctrine of judicial estoppel."

In spite of this clear language, Dr. Grise's initial brief does not even mention the words "judicial estoppel." His reply brief belatedly (and weakly) did so. But never did counsel bother to discuss whether judicial estoppel's rationale—to protect the integrity of the courts by preventing flip-flopping in different cases—was implicated by the somewhat dubious facts surrounding Dr. Grise's contested stipulation.[5] And given one final opportunity at oral argument to do so, Dr. Grise's counsel inexplicably claimed that the district court did not even reference judicial estoppel in its opinion.

### 2.    Mrs. Grise's Claims

As an initial matter, the district court correctly found that Mrs. Grise lacked standing on Counts One through Six, because they alleged violations personal to Dr. Grise. The Grises do not challenge that conclusion on appeal. That left Mrs. Grise with three species of claims: illegal search under federal and state law, failure to train and supervise under federal and state law, and outrage under state law. Given that Mrs. Grise never faced criminal charges, she was never asked to (and never did) stipulate to probable cause in return for the dismissal of charges. Mrs. Grise never took inconsistent positions with respect to probable cause, and she therefore was not judicially estopped from pressing her claims. Accordingly, the district court granted summary judgment against Mrs. Grise's claims on alternative grounds.

As for Mrs. Grise's search claims, the district court held that any "search" that occurred was privileged under a combination of the emergency aid exception to the warrant requirement and the protective sweep doctrine; the state law search claim failed because a private cause of action for violations of the Kentucky Constitution does not lie. The federal and state law

---

[5]    Still another issue left off the table—and thus one we do not consider today—is whether the Sixth Circuit's rule in *Coughlen v. Coots*, 5 F.3d 970 (6th Cir. 1993), applies in this context. *Coughlen* requires a civil defendant to establish the enforceability of an agreement purporting to release § 1983 claims in exchange for the dismissal of criminal charges.

supervisory claims could not be established absent an underlying constitutional violation or otherwise tortious act by Deputy Allen. We agree, and adopt the district court's reasoning in its entirety. And finally, to the extent Mrs. Grise intended to bring an outrage claim in the first instance, she did not address the district court's dismissal of that claim on appeal. Therefore, that claim is deemed waived and we need not address it further.

### a. Counts 7–10: Federal and State Law Illegal Search and Related Supervisory Claims

Mrs. Grise contends that Deputy Allen had neither a legitimate reason to enter her home nor any basis for his cursory look through a few additional rooms. Neither action violated federal constitutional law or Kentucky law. As for the federal claim, the district court was correct that the initial entry into the Grise home was justified under the emergency aid exception to the warrant requirement and that the subsequent "search" of the three rooms was justified as a protective sweep. As for the state law claim, Mrs. Grise's argument falters out of the gate— Kentucky law does not recognize a private right of action for violations of the Kentucky Constitution.

Start with the federal constitutional question, and with Deputy Allen's initial entry into the home. While warrantless searches are presumptively unreasonable, certain exigent circumstances may justify the absence of a warrant. *Payton v. New York*, 445 U.S. 573, 590 (1980); *United States v. Williams*, 354 F.3d 497, 503 (6th Cir. 2003). One such exception, often called the community caretaking exception, provides that law enforcement "may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Michigan v. Fisher*, 558 U.S. 45, 47 (2009). So long as there is "an objectively reasonable basis for believing . . . that a person within the house is in need of immediate aid," courts should excuse the lack of a warrant. *Id.* (internal quotation marks

omitted). Even where the constitutionality of police conduct is in some doubt, an officer is still entitled to qualified immunity absent a showing that such conduct "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Applied here, Deputy Allen had an objectively reasonable basis for concluding that Mrs. Grise was in need of immediate aid. The district court's summation of the facts is particularly helpful on this issue. While the parties dispute whether Dr. Grise knocked Mrs. Grise over as he attempted to return to his house—and while they also dispute whether Deputy Allen could have seen Mrs. Grise fall—the district court noted that it is undisputed that "between the time [Deputy Allen] thought he saw Mrs. Grise fall and the time Dr. Grise was arrested," Deputy Allen called for paramedics. The district court thus found that "it is clear Deputy Allen was aware Mrs. Grise was on the ground because he called the EMS to treat Mrs. Grise. The only real dispute is what caused her to fall." But that dispute, as the district court noted, did "not negate the exigency created by her fall." We agree. Seeing an elderly woman lying on the floor and apparently unable to get up, Deputy Allen was right to be concerned for Mrs. Grise's well-being. Deputy Allen's decision to enter the home with paramedics was therefore justified by exigent circumstances.

Deputy Allen's subsequent "search" of the home was also legally justified as a protective sweep. A protective sweep is a "quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Maryland v. Buie*, 494 U.S. 325, 327 (1990). An officer may conduct a protective sweep if there are "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent

officer in believing that the area to be swept harbors an individual posing danger to those on the

arrest scene." *Id.* at 334.

The district court correctly found that it was "objectively reasonable for Deputy Allen to

conduct a protective sweep." We cannot improve on the district court's analysis of the facts

justifying the protective sweep:

> Deputy Allen arrived on a report of gun shots in the middle of the night, he
> arrested Dr. Grise for assault, and he learned that Dr. Grise had a pistol on his
> person. Thus, the original shotgun was unaccounted for. Deputy Allen did not
> know if anyone else was in the home. He also suspected Dr. Grise to be
> intoxicated. With an elderly woman lying on the ground, it was not unreasonable
> to conduct a confined sweep to ensure the safety of the paramedics or Mrs. Grise.

The decision to conduct the sweep was justified, and it was also appropriately limited. The

Grises work hard to characterize Deputy Allen's search as an expansive one, but the record

reveals otherwise. Deputy Allen only entered the rooms immediately adjoining the room where

the paramedics were attending to Mrs. Grise. We, like the district court, reviewed the video of

the areas allegedly searched by Deputy Allen, and it would not take more than a few steps to go

from the living room, where Mrs. Grise was located, into the neighboring kitchen and dining

area. Deputy Allen conducted a valid protective sweep, not an unconstitutional search—and he

is therefore entitled to qualified immunity on Mrs. Grise's search claim.

The Grises advance several arguments to avoid this conclusion, but they are unavailing.

First, they question Deputy Allen's actual motive for conducting the search—which, the Grises

maintain, was to search for evidence that might "support the false charges he filed against Dr.

Grise." In support of this argument, they emphasize that Deputy Allen did not try to help Mrs.

Grise upon entering the house but instead "walked over her and through the living room, dining

room, and kitchen." That fact does not necessarily reveal Deputy Allen harbored any ulterior

motive, however, since EMS personnel had already arrived and were attending to Mrs. Grise.

Moreover, that fact is perfectly consistent with Deputy Allen's claimed justification for entering the home—to ensure the *safety of the paramedics* while they treated Mrs. Grise. But there is a more fundamental problem with the Grises' argument: it attempts to turn what the Supreme Court has made clear is an *objective* inquiry into a *subjective* one. *Buie* requires courts to consider whether facts available to the officer "would warrant a reasonably prudent officer in believing" some danger was present. 494 U.S. at 334. The facts here would warrant such a belief, and Deputy Allen's search of the premises was appropriately limited to ensure the safety of all present.

The Grises also claim that because Dr. Grise was arrested outside of his home, this case is outside *Buie*'s ambit. It is a creative argument, and one buoyed by a strict reading of *Buie*'s own language—which authorizes a sweep to protect those "on the arrest scene." *Id.* But that is an inappropriately cramped application of *Buie*. Dr. Grise's arrest began, according to the Grises' own version of events, when Deputy Allen forced Dr. Grise out of his home. Dr. Grise was then handcuffed outside his front door. The Grise home is thus properly considered the "arrest scene" within the meaning of *Buie*, and Mrs. Grise and the paramedics were on the scene.

But even were this panel to conclude that Deputy Allen's behavior was unjustified, we could not say that Deputy Allen violated clearly established law. *See Anderson v. Creighton*, 483 U.S. 635, 639 (1987); *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 545 (6th Cir. 2003). To show that an officer violated clearly established law, "the unlawfulness must be apparent under preexisting law." *Shamaeizadeh*, 338 F.3d at 546. But on facts similar to those here, this court recently justified a search of a home as a protective sweep. *See Stricker v. Township of Cambridge*, 710 F.3d 350, 362 (6th Cir. 2013). In *Stricker*, while EMS personnel were attending to an apparent drug overdose victim, police officers conducted a search of the *entire* home. The

court held that "the need to safeguard EMS, themselves, and others on the Stricker property made it objectively reasonable for the officers to conduct a protective sweep of the Stricker home to secure the premises so the paramedics could safely treat [the victim]." *Id.* If that far more extensive search was a justified protective sweep in light of the paramedics' presence, then Deputy Allen cannot be said to have violated clearly established law by taking a brief look into the rooms immediately adjoining Mrs. Grise's location. Accordingly, Deputy Allen is entitled to qualified immunity on the alternative ground that, whatever transgression he may have committed, it was not a violation of clearly established law.

Mrs. Grise's state law search claim fares no better. The district court determined that Kentucky law does not afford a private right of action for alleged violations of the Kentucky Constitution, and the Grises essentially do not respond to this conclusion. It would have been futile for them to do so, as the district court's reading of state law was correct: there is no statutory or common law right of action in Kentucky for violations of the state constitution. *St. Luke Hospital, Inc. v. Straub*, 354 S.W.3d 529, 536–37 (Ky. 2011). We therefore affirm the district court's grant of summary judgment against Mrs. Grise's federal and state law search claims. And just as with Dr. Grise, Mrs. Grise's inability to show an underlying constitutional violation or tort precludes her supervisory claims under both federal and state law. *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006) (federal law); *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 730 (Ky. 2009) (state law).

In sum, the district court properly granted summary judgment against all of the claims for which Mrs. Grise had standing.

### III

For the reasons set forth above, we **AFFIRM** the district court's decision.